2019 IL App (1st) 170308
No. 1-17-0308
Opinion filed August 1, 2019

Fourth Division

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 95 CR 26400 (01) |
| | ) | |
| TAKI PEACOCK, | ) | Honorable |
| | ) | Frank Zelezinski, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Justices Reyes and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Taki Peacock, is currently serving concurrent respective sentences of 80 years, 30 years, 30 years, and 30 years of imprisonment for his convictions for the 1995 first degree murder, aggravated kidnapping, aggravated vehicular hijacking, and armed robbery of the victim, Rufus Taylor. The evidence at defendant's bench trial, which is more fully set out in the opinion arising out of defendant's direct appeal (see *People v. Peacock*, 324 Ill. App. 3d 749 (2001)), showed that defendant and a co-offender, Lawrence Wallace, planned to take the victim's car and defendant obtained a gun from his sister-in-law. The next day, Wallace put a gun to the victim's head and held him at gunpoint in the backseat of the victim's vehicle, while defendant drove to a secluded location. Thereafter, Wallace shot the victim twice, and defendant

fired at the victim once but missed. Wallace and defendant left in the victim's car and were apprehended in that vehicle in Indiana. The victim later died from his injuries. Defendant was 17 years old at the time of the offense.

¶ 2    This appeal concerns defendant's September 12, 2016, successive postconviction petition, in which he argued that his 80-year sentence was an unconstitutional *de facto* life sentence pursuant to *Miller v. Alabama*, 567 U.S. 460 (2012). The circuit court denied defendant leave to file his successive postconviction petition on October 12, 2016, finding that the petition was untimely and that defendant had failed to file a motion for leave to file the petition.

¶ 3    In this court, defendant contends that he should have been permitted to file his successive postconviction petition because the 80-year sentence imposed on his conviction for a crime committed while he was a juvenile constitutes a *de facto* life sentence and violates the eighth amendment of the United States Constitution and the proportionate penalties clause of the Illinois Constitution. Defendant acknowledges that he may qualify for day-for-day credit, and accordingly, he will be required to serve at least 50%, or 40 years, of his 80-year sentence. Defendant contends that his sentence is a *de facto* life sentence, triggering the protections of *Miller* and requiring a sentencing court to consider defendant's youth and attendant characteristics in fashioning a sentence. Defendant further contends that the circuit court did not consider such factors, and accordingly, this court should remand his case for a new sentencing hearing.

¶ 4    The State responds that the circuit court properly denied defendant leave to file his successive postconviction petition because his 80-year sentence, for which he will "likely serve 40 years," does not constitute a *de facto* life sentence. The State points out that a review of defendant's Illinois Department of Corrections (IDOC) inmate status record reveals a projected

discharge date of August 31, 2035, exactly 40 years after he went into IDOC custody, on August 31, 1995.[1]

¶ 5     We note that this court previously stayed this case, without objection from either party, because the singular issue in this case would be controlled by the supreme court's forthcoming decision in *People v. Buffer*, 2019 IL 122327. The supreme court has since issued its decision in *Buffer*, and accordingly, this court lifted the stay for ruling on this case.

¶ 6     In *Buffer*, the supreme court reviewed the circuit court's denial of the defendant's postconviction petition, in which the defendant argued that his 50-year prison sentence, imposed for a crime he committed when he was 16 years old, violated the eighth amendment because it was a *de facto* life sentence.

¶ 7     After reviewing the history of *Miller* and its progeny, the court in *Buffer* noted that to prevail on such a claim, "a defendant sentenced for an offense committed while a juvenile must show that (1) the defendant was subject to a life sentence, mandatory or discretionary, natural or *de facto*, and (2) the sentencing court failed to consider youth and its attendant characteristics in imposing the sentence." *Id.* ¶ 27 (citing *People v. Holman*, 2017 IL 120655, ¶ 40, and *People v. Reyes*, 2016 IL 119271, ¶ 9).

¶ 8     The supreme court then considered where the line should be drawn at which a sentence constitutes a *de facto* life sentence. In its analysis, the supreme court looked to section 5-4.5-105(c) of the Unified Code of Corrections (Code), which provides that where a juvenile defendant is convicted of the first degree murder of a victim belonging to certain categories of persons, including police officers and IDOC employees, " 'the court shall impose a sentence of

---

[1]This court may take judicial notice of information appearing on the IDOC website. *People v. Ware*, 2014 IL App (1st) 120485, ¶ 29.

not less than 40 years of imprisonment.' " *Id.* ¶ 37 (quoting 730 ILCS 5/5-4.5-105(c) (West 2016)).

¶ 9 The supreme court used this statute to conclude that

"the General Assembly has determined that the specified first degree murders that would justify natural life imprisonment for adult offenders would warrant a mandatory minimum sentence of 40 years for juvenile offenders. The legislature evidently believed that this 40-year floor for juvenile offenders who commit egregious crimes complies with the requirements of *Miller*." *Id.* ¶ 39.

¶ 10 The supreme court then stated,

"In determining when a juvenile defendant's prison term is long enough to be considered *de facto* life without parole, we choose to draw a line at 40 years. This specific number does not originate in court decisions, legal literature, or statistical data. It is not drawn from a hat. Rather, this number finds its origin in the entity best suited to make such a determination—the legislature." *Id.* ¶ 40.

¶ 11 The court then concluded that "a prison sentence of 40 years or less imposed on a juvenile offender does not constitute a *de facto* life sentence in violation of the eighth amendment." *Id.* ¶ 41. Accordingly, the court found that the defendant's 50-year sentence, which was greater than 40 years, was a *de facto* life sentence. *Id.* ¶ 42.

¶ 12 The court in *Buffer* also concluded that the circuit court failed to consider the defendant's youth and its attendant characteristics in imposing that sentence. *Id.* While the court noted that the circuit court stated that it " 'considered all of the relevant statutory requirements,' " including the presentence investigation report (PSI) and the defendant's age, the record did not indicate

that the court considered defendant's youth and its attendant characteristics as required by *Miller* and its progeny. *Id.* ¶¶ 5, 46 (citing *Holman*, 2017 IL 120655, ¶ 46).

¶ 13 Following the supreme court's decision in *Buffer*, this court allowed the parties to file supplemental briefs to address the impact of the supreme court's opinion on defendant's claims.

¶ 14 In defendant's supplemental brief, he contends that *Buffer* supports a finding that his 80-year sentence constitutes a *de facto* life sentence and that such a conclusion is warranted when considering either his full sentence or the possibility that he may serve 40 years in prison under day for day sentencing. Defendant contends that the *Buffer* court "did not clearly delineate" whether a *de facto* life sentence is a sentence of "40 years or more" or if it only includes sentences that are "more than 40 years." Defendant acknowledges that the court stated that "a prison sentence of 40 years or less imposed on a juvenile offender does not constitute a *de facto* life sentence." *Id.* ¶ 41. Defendant, however, also points out that the *Buffer* court stated that it chose "to draw a line at 40 years" (*id.* ¶ 40) and that the special concurrence in *Buffer* characterized the majority opinion as holding that "a prison term of 40 years 'is long enough to be considered *de facto* life without parole' " (*id.* ¶ 60 (Burke, J., specially concurring)). Defendant also points out that the supreme court's analysis was based on section 5-4.5-105(c) of the Code, and contends that the supreme court's statement that a sentence of 40 years is not a *de facto* life sentence "does not make sense in light of section 5-4.5-105(c)'s requirement that the minimum sentence of 40 years be imposed on a juvenile for offenses that would require the imposition of natural life for an adult." Finally, defendant asserts that, even assuming that the *Buffer* court intended that only sentences of more than 40 years constitute *de facto* life sentences, defendant's sentence violates *Buffer* because it is not guaranteed that he will serve only 40 years

and his sentence is "entirely dependent on the condition that *** he will not forfeit even one day of good conduct credit."

¶ 15    In response, the State contends that defendant's sentence is constitutional under *Buffer*. The State points out that defendant's projected release date was previously August 31, 2035, "exactly 40 years from the date of the offense," but between the time defendant filed his supplemental brief and the State filed its response, "defendant's projected release date was recently shortened by 15 days to August 16, 2035." The State contends that defendant will "now likely serve 39 years, 11 months and 16 days in prison" prior to his release, and accordingly, "his sentence does not constitute a *de facto* life sentence in violation of the eighth amendment."

¶ 16    Although the supreme court's decision in *Buffer* did not specifically address the situation we are faced with here, in which a defendant has been sentenced to a lengthy prison sentence but is eligible for good-conduct sentencing credit, *Buffer*'s reasoning applies. The import of *Miller*, and all of the subsequent decisions following it, including *Buffer*, is " 'that imposition of a State's most severe penalties on juvenile offenders cannot proceed as though they were not children.' " *Id.* ¶ 18 (quoting *Miller*, 567 U.S. at 474).

¶ 17    Following our supreme court's guidance in *Buffer*, we conclude that defendant's 80-year sentence in this case constitutes a *de facto* life sentence. See also *People v. Harvey*, 2019 IL App (1st) 153581, ¶ 10 (holding that, pursuant to *Buffer*, the defendant's 52-year sentence was a *de facto* life sentence).

¶ 18    In so holding, we recognize that defendant may be eligible for day-for-day credit, pursuant to which he may be eligible for release after 40 years—on the dividing line between what the supreme court has defined as *de facto* life and not *de facto* life sentences. Although the parties disagree as to whether the supreme court has explicitly concluded that a sentence on the

40-year dividing line should be considered a *de facto*, or not a *de facto*, life sentence, we need not make that determination here.

¶ 19　Defendant was not sentenced to 40 years' imprisonment but was instead sentenced to 80 years' imprisonment with the mere possibility of release after 40 years. Moreover, to serve a sentence of 40 years, he must receive every single day of good conduct credit for which he could be eligible. Defendant's receipt of day-for-day credit is not guaranteed. See *People ex rel. Colletti v. Pate*, 31 Ill. 2d 354, 357 (1964) ("Good time, although a part of every sentence, is a conditional right which may be forfeited prior to the time a convict is entitled to discharge, having served his maximum sentence less good-time credits."); *People ex rel. Braver v. Washington*, 311 Ill. App. 3d 179, 187-89 (1999) ("The award of good-conduct time and the decision to consider such an award are discretionary by statute; the Director of IDOC is not required to grant the time or even consider it, absent a clear duty to act ***."). The IDOC "has the right to revoke good-conduct credits for disciplinary infractions, [and] an inmate's right to receive the credits is contingent upon his good behavior while in prison." *Johnson v. Department of Corrections*, 368 Ill. App. 3d 147, 152 (2006); see also *People v. Lindsey*, 319 Ill. App. 3d 586, 593 (2001) (the purpose of credit provisions is to "provide felonious inmates with incentive to conform their behavior to prison rules"). The IDOC "ultimately has discretion as to whether defendant will be awarded any credit," and the trial court has no control over the manner in which a defendant's good conduct credit is earned or lost. (Internal quotation marks omitted.) *People v. Castano*, 392 Ill. App. 3d 956, 960 (2009). Accordingly, we conclude that defendant's 80-year sentence, for which he may receive day-for-day credit, constitutes a *de facto* life sentence.

¶ 20    Our conclusion remains the same despite the State's reference to defendant's IDOC inmate status report, which indicates that his projected release date was shortened by 15 days to August 16, 2035, making his projected sentence approximately two weeks under 40 years. See *Internet Inmate Status*, Ill. Dep't of Corr., https://www.idoc.state.il.us/subsections/search/inms_print.asp?idoc=K67561 (last visited July 24, 2019) [https://perma.cc/3R2Z-9UC6]. As stated above, our review of defendant's IDOC status report one month prior, indicated that his projected release date was August 31, 2035. It is unclear to this court what circumstances supported the 15-day adjustment in defendant's projected release date, and the State has provided no explanation for the change. Nonetheless, the change in defendant's projected release date only illustrates the uncertainty and indefiniteness in defendant's sentence based on the IDOC's authority to award or revoke sentencing credit. See *People ex rel. Colletti*, 31 Ill. 2d at 357; *People ex rel. Braver*, 311 Ill. App. 3d at 187-89. In these circumstances, and in the interests of justice, we conclude that defendant's sentence constitutes a *de facto* life sentence. See *People v. Taylor*, 221 Ill. 2d 157, 162 (2006) ("criminal or penal statutes are to 'be strictly construed in favor of the accused, and nothing should be taken by intendment or implication beyond the obvious or literal meaning of the statute' " (quoting *People v. Laubscher*, 183 Ill. 2d 330, 337 (1998))); *People v. Gutman*, 2011 IL 110338, ¶ 12 ("Pursuant to the rule of lenity, ambiguous criminal statutes will generally be construed in the defendant's favor.").

¶ 21    We also conclude that the circuit court failed to consider the defendant's youth and its attendant characteristics in imposing defendant's sentence. The State conclusively asserts that the record establishes that the circuit court "considered *** defendant's age and its attendant circumstances," but the State provides no support for such a conclusion.

¶ 22    As our supreme court has stated, a juvenile defendant may be sentenced to life or *de facto* life imprisonment, but before doing so, the trial court must

> "determine[ ] that the defendant's conduct showed irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation. The court may make that decision only after considering the defendant's youth and its attendant characteristics. Those characteristics include, but are not limited to, the following factors: (1) the juvenile defendant's chronological age at the time of the offense and any evidence of his particular immaturity, impetuosity, and failure to appreciate risks and consequences; (2) the juvenile defendant's family and home environment; (3) the juvenile defendant's degree of participation in the homicide and any evidence of familial or peer pressures that may have affected him; (4) the juvenile defendant's incompetence, including his inability to deal with police officers or prosecutors and his incapacity to assist his own attorneys; and (5) the juvenile defendant's prospects for rehabilitation." *Holman*, 2017 IL 120655, ¶ 46.

See also *Buffer*, 2019 IL 122327, ¶ 19.

¶ 23    The State points out that the circuit court "reviewed the [PSI] and considered evidence in aggravation and mitigation—including that defendant was 17 years-old at the time of the offense." However, we find nothing in the record to show that the circuit court specifically considered defendant's youth and its attendant characteristics, specifically those factors articulated by our supreme court in *Holman*. See *People v. Morris*, 2017 IL App (1st) 141117, ¶ 32 (concluding that circuit court's consideration of the PSI was not "the equivalent to a full

consideration of those special characteristics contained within the PSI report" particularly where the court did not "weigh heavily defendant's opportunity for rehabilitation").

¶ 24 Following *Buffer*, we conclude that the court's mere awareness of a defendant's age and consideration of a PSI does not provide evidence that the circuit court specifically considered defendant's youth and its attendant characteristics. See also *Harvey*, 2019 IL App (1st) 153581, ¶ 13. Therefore, we must conclude that defendant's sentence violates the eighth amendment, and we vacate that sentence as unconstitutional. *Buffer*, 2019 IL 122327, ¶ 42.

¶ 25 In so holding, we also note that the proper remedy in such circumstances is to remand this matter for a new sentencing hearing. See *id.* ¶¶ 44-47 ("Based on the particular issue raised in this appeal and in the interests of judicial economy, *** the proper remedy is to vacate defendant's sentence and to remand for a new sentencing hearing."). Further, defendant shall be entitled on remand to be sentenced under the scheme prescribed by section 5-4.5-105 of the Code (730 ILCS 5/5-4.5-105 (West 2016)). *Buffer*, 2019 IL 122327, ¶ 47.

¶ 26 In light of our holding, we need not reach defendant's alternative argument—that his sentence violates the Illinois proportionate penalties clause. We therefore reverse the judgment of the trial court, and remand the case for further proceedings consistent with this opinion. Mandate to issue *instanter*.

¶ 27 Reversed and remanded.

No. 1-17-0308

| | |
|---|---|
| **Cite as:** | *People v. Peacock*, 2019 IL App (1st) 170308 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 95-CR-26400(01); the Hon. Frank Zelezinski, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Patricia Mysza, and Manuela Hernandez, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Miles J. Keleher, Assistant State's Attorneys, of counsel), for the People. |