2020 IL App (1st) 172268-U

No. 1-17-2268

Order filed August 13, 2020

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 96 CR 01838 |
| | ) | |
| NICHOLAS MORFIN, | ) | Honorable |
| | ) | Arthur Hill, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE BURKE delivered the judgment of the court.
Presiding Justice Gordon and Justice Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We reverse and remand for resentencing where defendant's 52-year sentence for an offense committed when he was a juvenile violates the eighth amendment where the sentencing court failed to sufficiently consider defendant's youth and its attendant characteristics and his potential for rehabilitation, regardless of his eligibility for day-for-day good conduct credit.

¶ 2    Defendant Nicholas Morfin was convicted, on the basis of accountability, of two counts of first degree murder in the shooting deaths of two 13-year-old victims, Carrie Hovel and Helena Martin, in 1995. The offenses were committed when defendant was 17 years old. The trial court

sentenced defendant to a term of natural life imprisonment, as mandated by statute. In 2010, defendant filed a *pro se* petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2008)). The circuit court denied his petition and his subsequent motion to reconsider and defendant appealed. While defendant's cause was pending on appeal, the United States Supreme Court issued its decision in *Miller v. Alabama*, 567 U.S. 460 (2012). Defendant argued that his sentence of natural life was unconstitutional in light of *Miller*. *People v. Morfin*, 2012 IL App (1st) 103568. This court agreed and found that defendant was entitled to a new sentencing hearing in light of *Miller*. *Id.* ¶ 59. On remand, the circuit court resentenced defendant to two concurrent terms of 52 years' imprisonment "at 50 percent.". On appeal, defendant contends that he is entitled to a new sentencing hearing where his 52-year sentence represents an unconstitutional *de facto* life sentence in violation of *Miller* and the Illinois supreme court's recent decision in *People v. Buffer*, 2019 IL 122327. For the following reasons, we reverse the circuit court's ruling, vacate defendant's sentence, and remand for a new sentencing hearing.

¶ 3                              I. BACKGROUND

¶ 4                              A. Jury Trial

¶ 5     A full recitation of the facts of defendant's trial can be found in this court's order on defendant's direct appeal. *People v. Anderson and Morfin*, Nos. 1-98-2438 & 1-98-2390 (cons.) (2000) (unpublished order under Supreme Court Rule 23). As relevant here, defendant was charged under a theory of accountability for the shooting deaths of Hovel and Martin. Defendant was charged along with four other individuals: Eric Anderson, William Bigeck, Edward Morfin (Edward), and Nicholas Liberto. Bigeck and Edward, who were both over 18 years old at the time of the offense, pleaded guilty in exchange for their testimony at defendant's and Anderson's trials.

Liberto was tried separately. Defendant and Anderson, who was 15 years old at the time of the shooting, were charged together, but were tried at separate jury trials. Wayne Antusas and Matt Sopron, who were also involved in the shooting, were subsequently indicted and tried in a joint bench trial. Both were sentenced to terms of mandatory life imprisonment. *People v. Sopron and Antusas*, Nos. 1-98-1890 & 1-98-1957 (cons.) (2001) (unpublished order under Supreme Court Rule 23).

¶ 6     At defendant's trial, the State presented evidence showing that Anderson, Bigeck, and defendant were all members of the Almighty Popes street gang. On the day of the shooting, Anderson and Bigeck stole two revolvers from the home of a police officer and brought them to defendant's home. Defendant and Anderson tested the guns by firing them in the basement. Defendant then hid one of the guns in his bedroom. Later that day, Anderson, Bigeck, and defendant met with the leaders of the Almighty Popes who ordered them to attack members of a rival gang who had been in Almighty Popes' territory. The gang leaders ordered Anderson to do the shooting and ordered defendant to wipe the fingerprints and serial numbers off of the stolen guns. Later that evening, Anderson, Edward, and Bigeck walked up to a van that they associated with the rival gang and Anderson fired several shots at the van, fatally wounding Hovel and Martin. Defendant was supposed to provide a ride for Anderson and the others after the shooting, but defendant did not show up.

¶ 7     After the shooting, defendant took police officers who were investigating the shooting to his home and signed a consent to search form. He showed the officers one of the two stolen revolvers that he had hidden in his bedroom. Later that morning, defendant spoke to Edward through the wall in their adjacent interview rooms at the police station. After their conversation, Edward agreed to cooperate with the police and led them to the second stolen revolver that was

the murder weapon. The jury found defendant guilty of the first degree murders of Hovel and Martin. Following a sentencing hearing, the circuit court sentenced defendant to two concurrent terms of natural life imprisonment.

¶ 8                             B. Direct Appeal and Post-Judgment Pleadings

¶ 9     This court affirmed defendant's convictions and sentence on direct appeal *People v. Anderson and Morfin*, Nos. 1-98-2438 & 1-98-2390 (cons.) (2000) (unpublished order under Supreme Court Rule 23). In September 2005, defendant filed, through counsel, a "Motion to Vacate Void and Unconstitutional Judgment." Defendant asserted, citing the supreme court's then-recent decision in *People v. Leon Miller*, 202 Ill. 2d 328 (2002) (*Leon Miller*), that the statute mandating a sentence of natural life imprisonment was unconstitutional. The court granted the State's motion to dismiss, finding that defendant's claims were barred by *res judicata* and that *Leon Miller* held that the statute at issue in that case was unconstitutional as applied to defendant Leon Miller, but the court found that different circumstances required a different result in this case. This court affirmed the circuit court's dismissal on appeal. *People v. Morfin*, No. 1-06-0945 (2007) (unpublished order under Supreme Court Rule 23).

¶ 10     In July 2010, defendant filed a petition pursuant to section 2-1401(f) of the Code. 735 ILCS 5/2-1401(f) (West 2008). Defendant contended that "the court had no authority to extend his sentence to natural life imprisonment because (1) it had no authority to find him guilty of more than one murder as there was no evidence of his intent to kill more than one person, and (2) his conviction was on an accountability basis." *Morfin*, 2012 IL App (1st) 103568, ¶ 20. The circuit court dismissed the petition, finding that defendant failed to present new evidence and that the State was not required to prove defendant's intent to kill more than one person to sustain the convictions. *Id.* ¶ 21.

¶ 11    While defendant's case was pending before this court on appeal, the Supreme Court issued its decision in *Miller*, which held that the eighth amendment prohibited mandatory sentences of life imprisonment without the possibility of parole for offenders who were minors at the time of the offense. *Id.* ¶ 25. This court determined that *Miller* applied retroactively to defendant's sentence and remanded the cause for resentencing. *Id.* ¶¶ 56, 59. This court found that on remand, the circuit court "may sentence a defendant convicted of first degree murder committed as a minor to a prison term of 20 to 60 years, up to 100 years where an appropriate extended-term finding has been made, or to natural life imprisonment." *Id.* ¶ 59.

¶ 12                          C. Defendant's Resentencing Hearing

¶ 13    On remand, defendant filed, through counsel, a presentencing memorandum. In his memorandum, defendant contended that the sentencing range in this case was a "term of not less than 20 years and not more than 60 years" based on section 5-8-1(a)(1)(a) of the Criminal Code as it read when defendant was sentenced. 730 ILCS 5/5-8-1(a)(1)(a) (West 1994). The memorandum also highlighted that defendant did not have any criminal history, and did not have any "serious tickets or violations" in the two decades he had been in custody at the Illinois Department of Corrections (IDOC). Defendant further asserted that he had actively participated in programs at the Cook County Jail and completed mentor and educational programs. Defendant also authored and self-published a book educating parents and juveniles about the dangers of gang involvement.

¶ 14    At defendant's resentencing hearing, the State presented in aggravation victim impact statements from Hovel's grandparents and her mother and stepfather. The State also argued that defendant was heavily involved in the shootings, identifying the van with the victims and hosting the target practice in his basement. The State noted that it was important for the court to consider defendant's conduct since he had been incarcerated. The State asserted that defendant did not start

to take classes and write his book until after *Miller* was decided and he had an opportunity to be released from prison.

¶ 15    In mitigation, defendant primarily relied on the contents of his presentence memorandum, which included letters from friends and family on his behalf, excerpts from his book, and certificates and grades from the courses he took in IDOC. Defense counsel asserted that defendant was not able to take advantage of the courses offered by the IDOC before the Supreme Court's ruling in *Miller* because those resources were reserved for offenders who had a "determinate sentence." Defense counsel argued that defendant's age at the time of his offense, his lack of criminal history, and his conduct in the IDOC warranted a sentence at the lower end of the sentencing range. Defendant then gave a lengthy statement in allocution where he apologized to the victims' families and explained that he acted out of fear of his fellow gang members.

¶ 16    The parties stipulated to the testimony of Chicago police detective James O'Brien from Anderson's resentencing hearing regarding the investigation into the shooting and defendant's subsequent arrest.

¶ 17    In resentencing defendant, the circuit court recounted the trial evidence and noted the changes in the law since defendant had first been sentenced. The court noted that "for the longest time, every offense was 50 percent, meaning whatever sentence you got, if you're good every day, then you could complete your sentence in half the time." The court noted that the truth in sentencing statute changed the law for some offenses and murder. The court mentioned the United States Supreme Court's ruling in *Miller* and noted the "whole slew of cases" that resulted in resentencing because of *Miller* and its progeny.

¶ 18    The court noted that based on this precedent, it could not sentence defendant to a term of natural life imprisonment "even if I wanted to." The court found that the sentencing scale "reverts

back to the old law" with a range of "20 years minimum to 60 years maximum at 50 percent." The court stated that in determining defendant's sentence, it considered the victim impact statements, the facts of the case, the arguments in aggravation, defendant's mitigation packet, the presentence investigation report, and defendant's statement in allocution. The court stated that it was "mindful of the context in which [defendant's] participation and his rehabilitation played in this circumstance." The court determined that the appropriate sentence was 52 years' imprisonment, "that will be at 50 percent." The court subsequently denied defendant's motion to reconsider his sentence. This appeal follows.

¶ 19                                            II. ANALYSIS

¶ 20     On appeal, defendant contends that his 52-year sentence for an offense he committed when he was 17 years old violates the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I. § 11) and the eighth amendment of the United States Constitution (U.S. Const., amend. VIII). Defendant asserts that he was convicted under a theory of accountability and that since he was resentenced in 2017, the Illinois supreme court has issued its decision in *Buffer*, finding that a sentence of more than 40 years for a juvenile is considered a *de facto* life sentence under *Miller* and its progeny. Defendant contends that his *de facto* life sentence is unconstitutional where the resentencing court did not find that he was permanently incorrigible and where the court failed to adequately consider his youth and its attendant characteristics. In the alternative, defendant contends that his sentence is excessive where the court did not give adequate weight to his rehabilitative potential and his youth.

¶ 21                              A. *Miller* and its Progeny

¶ 22     In *Miller*, the Supreme Court held that sentences of "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition

on 'cruel and unusual punishments.' " *Miller*, 567 U.S. at 465. The Court based this decision on the rationale that minors are constitutionally different from adults for purposes of sentencing, as they are less mature and responsible, more impulsive, and more vulnerable to peer pressure than adults. *Id.* at 471-74. As such, the Court concluded that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Id.* at 479. The Court did not prohibit life sentences for juveniles in all circumstances, but required that a judge or jury to have the opportunity to consider mitigating circumstances before imposing "the harshest possible penalty" for juveniles. *Id.* The mitigating circumstances include the juvenile's age, and its "hallmark features," and the juvenile's possibility for rehabilitation. *Id.* at 477-78.

¶ 23   The Supreme Court expanded on its decision in *Miller* in *Montgomery v. Louisiana*, 577 U.S. ___, 136 S. Ct. 718 (2016). In *Montgomery*, the Court determined that *Miller* should apply retroactively and that state courts must apply *Miller* in collateral proceedings. *Id.* at ___, 136 S. Ct. at 732. The Court further found that *Miller* did not prohibit all life sentences for juveniles, but reserved life sentences for "the rare juvenile offender whose crime reflects irreparable corruption." (Internal quotation marks omitted.) *Id.* at ___, 136 S. Ct. at 733. Throughout the decision, the court repeatedly stated that the decision in *Miller* applied only to juvenile offenders sentenced to "mandatory life without parole." *Id.* at ___, 136 S. Ct. at 726, 732, 736.

¶ 24   In *People v. Reyes*, 2016 IL 119271, our supreme court expanded the holding of *Miller*, finding that *Miller* applied to so-called "*de facto*" life sentences for juveniles. The supreme court found that such sentences violate *Miller* where the sentence is so long that it "amounts to the functional equivalent of life." *Id.* ¶ 9. Recently, in *People v. Buffer*, 2019 IL 122327, ¶ 40, our supreme court determined that a prison term of 40 years or more is considered a *de facto* life

sentence under *Miller*. Further, in *People v. Holman*, 2017 IL 120655, ¶ 40, the supreme court applied *Miller* to discretionary life sentences finding that "[l]ife sentences, whether mandatory or discretionary, for juvenile defendants are disproportionate and violate the eighth amendment, unless the trial court considers youth and its attendant characteristics." The *Holman* court held that "a juvenile defendant may be sentenced to life imprisonment without parole, but only if the trial court determines that the defendant's conduct showed irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation." *Id.* ¶ 46.

¶ 25    The *Holman* court set forth a variety of factors a sentencing court should consider in determining whether to sentence defendant to a term of life imprisonment, or *de facto* life imprisonment, without parole:

> "(1) the juvenile defendant's chronological age at the time of the offense and any evidence of his particular immaturity, impetuosity, and failure to appreciate risks and consequences; (2) the juvenile defendant's family and home environment; (3) the juvenile defendant's degree of participation in the homicide and any evidence of familial or peer pressures that may have affected him; (4) the juvenile defendant's incompetence, including his inability to deal with police officers or prosecutors and his incapacity to assist his own attorneys; and (5) the juvenile defendant's prospects for rehabilitation." *Id.* See also 730 ILCS 5/5-4.5-105(a) (West 2016) (codifying these factors).

¶ 26    Citing *Miller*, and the supreme court's recent decision in *Buffer*, defendant asserts that his 52-year sentence represents a *de facto* life sentence that the resentencing court entered without considering the factors outlined in *Holman* and section 5-4.5-105(a) of the Unified Code of Corrections (730 ILCS 5/5-4.5-105(a) (West 2016)). Defendant maintains that his sentence therefore violates the proportionate penalties clause and the eighth amendment where the

resentencing court did not implicitly or explicitly find that defendant was "irretrievably depraved, permanently incorrigible, or beyond the possibility of rehabilitation" prior to entering the sentence. We agree.

¶ 27     A review of the resentencing hearing shows that in resentencing defendant, the court primarily focused on the facts of the case. The court noted defendant's participation in the shooting practice in the basement of his home and his involvement in the planning of the shooting. The court stated that it considered the materials in defendant's mitigation packet and defendant's presentence investigation report, but the court did not comment on the factors detailed in the *Holman* or section 5-4.5-105(a). Although the court was aware of defendant's age at the time of the offense, it did not discuss whether there was evidence of defendant's "particular immaturity, impetuosity, and failure to appreciate risks and consequences" or his "incompetence" and only vaguely commented on defendant's "prospects for rehabilitation." *Holman*, 2017 IL 120655, ¶ 46; see, *e.g.*, *People v. Daniel*, 2020 IL App (1st) 172267, ¶ 28 ("[T]he record indicates that the trial court focused on the severity of the crime and the age of the victim. The court also mentioned defendant's youth. We find nothing in the record to show that the trial court specifically considered defendant's youth and attendant circumstances before sentencing him to a *de facto* life sentence.").

¶ 28     The State asserts that the record shows that the court reviewed defendant's mitigation packet and was aware of defendant's age at the time of the offense, but in its discretion determined that the seriousness of the offense outweighed the factors presented in mitigation, including defendant's youth and his potential for rehabilitation. Despite these comments by the court, "we find nothing in the record to show that the circuit court specifically considered defendant's youth and its attendant characteristics, specifically those factors articulated by our supreme court in *Holman*." *People v. Peacock*, 2019 IL App (1st) 170308, ¶ 23, *appeal filed*, Nov. 1, 2019; see also,

*People v. Morris*, 2017 IL App (1st) 141117, ¶ 32 (finding that although the court commented on defendant's youth and upbringing and acknowledged that it read the PSI, the court's observations were not "equivalent to a full consideration of those special characteristics contained within the PSI report" and did not reflect that "the trial court carefully considered defendant's youthful characteristics against those aggravating factors before coming to the ultimate conclusion that defendant is 'the rarest of juvenile offenders *** whose crimes reflect permanent incorrigibility,' rather than a reflection of his 'unfortunate yet transient immaturity.' " (quoting *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 734); *People v. Zachary Reyes*, 2020 IL App (2d), 180237, ¶¶ 31-32 (finding that although the record showed that the trial court stated that it considered the *Miller* factors at the juvenile defendant's sentencing hearing and specifically noted the defendant's age before sentencing him to a *de facto* life sentence, the "trial court never commented on the defendant's immaturity, impetuosity, or ability to understand risks and consequences *** and did not specifically address whether the defendant was too young or too immature to resist the negative influences surrounding him at the time, or whether he was mature enough to maintain control over his actions.").

¶ 29    As such, although the record reflects that the circuit court did consider some characteristics of defendant's youth before imposing his sentence, under *Holman*, its consideration was insufficient to support the imposition of a *de facto* life sentence. See *Daniel*, 2020 IL App (1st) 172267, ¶ 28, *Peacock*, 2019 IL App (1st) 170308, ¶ 23; see also, *People v. Thornton*, 2020 IL App (1st) 170677, ¶ 25 ("[W]e find nothing in the record to show that the circuit court specifically considered the defendant's youth and its attendant circumstances, such as the factors articulated in *Holman*, when fashioning his sentence.").

¶ 30    The State maintains, however, that defendant's 52-year sentence was not a *de facto* life sentence because he was sentenced before "truth-in-sentencing," which requires those convicted of first degree murder after June 1998 to serve 100% of their imposed sentences. See 730 ILCS 5/3-6-3(a)(2)(i) (West 1998). Rather, as the trial court recognized, because defendant was originally sentenced before June 1998, he is entitled to day-for-day good conduct credit. See 730 ILCS 5/3-6-3(a)(2) (West 1996) (the prisoner "shall receive one day of good conduct credit for each day of service in prison other than where a sentence of 'natural life' has been imposed. Each day of good conduct credit shall reduce by one day the inmate's period of incarceration set by the court."). As such, the State asserts that defendant's 52-year sentence is in reality only a 26-year sentence because defendant is eligible for day-for-day good conduct credit. Indeed, the State points out that IDOC records indicate that defendant is scheduled for release in July 2021, 26 years after he was originally taken into custody.[1]

¶ 31    This court has considered and rejected such arguments in three recent decisions. First, in *Peacock*, 2019 IL App (1st) 170308, ¶ 3, the juvenile defendant was sentenced to 80 years' imprisonment. As in this case, defendant Peacock was originally sentenced before the truth-in-sentencing statute went into effect and thus was entitled to day-for-day good conduct credit against his 80-year sentence. *Id.* The State argued, as it does here, that defendant was "likely" to serve only 40 years' imprisonment, rather than 80, which would not constitute a *de facto* life sentence under *Buffer*. *Id.* ¶ 4. This court rejected the State's argument, finding that the availability of statutory sentencing credit is irrelevant to the determination of whether a defendant has been sentenced to a *de facto* life sentence. *Id.* ¶ 19. The *Peacock* court explained:

---

[1]This court may take judicial notice of information appearing on the IDOC website. *People v. Ware*, 2014 IL App (1st) 120485, ¶ 29.

"Defendant was not sentenced to 40 years' imprisonment but was instead sentenced to 80 years' imprisonment with the mere possibility of release after 40 years. Moreover, to serve a sentence of 40 years, he must receive every single day of good conduct credit for which he could be eligible. Defendant's receipt of day-for-day credit is not guaranteed. [Citations]. The IDOC 'has the right to revoke good-conduct credits for disciplinary infractions, [and] an inmate's right to receive the credits is contingent upon his good behavior while in prison.' [Citations]. The IDOC 'ultimately has discretion as to whether defendant will be awarded any credit,' and the trial court has no control over the manner in which a defendant's good-conduct credit is earned or lost. [Citation]. Accordingly, we conclude that defendant's 80-year sentence, for which he may receive day-for-day credit, constitutes a *de facto* life sentence." *Id.*

¶ 32    Following *Peacock*, in *Thornton*, 2020 IL App (1st) 170677, ¶ 22, this court once again rejected the State's argument that a juvenile defendant's sentence was not a *de facto* life sentence because he was eligible to receive day-for-day good conduct credit and would "likely" serve a sentence of only 35 years, rather than the 70-year term imposed by the circuit court. Citing *Peacock*, this court found that day-for-day credit is not guaranteed and that it is the IDOC, not the circuit court, that has the ultimate discretion as to whether the defendant will be awarded any credit. *Id.* (citing *Peacock*, 2019 IL App (1st) 170308, ¶ 19). The *Thornton* court concluded that the State's "assurances" that defendant would earn sufficient good conduct credit to be released from prison in 35 years, were not enough for the court to "consider defendant's sentence as anything other than a 70-year term." *Thornton*, 2020 IL App (1st) 170677, ¶ 22.

¶ 33    While the case at bar was pending on appeal, another panel of this court issued its decision in *Daniel*, 2020 IL App 172267. As in *Peacock* and *Thornton*, the State argued that defendant

Daniel's 70-year sentence was not a *de facto* life sentence because he had the opportunity to be released after 35 years' imprisonment based on his eligibility for day-for-day good conduct credit. *Id.* ¶¶ 14, 15. Relying on *Peacock* and *Thornton*, this court found that although the defendant was eligible for day-for-day credit that would likely reduce his time served to 35 years, his 70-year sentence was nonetheless a *de facto* life sentence under *Buffer*. *Id.* ¶ 26.

¶ 34    We find the same result is warranted here. In this case, defendant was sentenced to a term of imprisonment of 52 years. Defendant was not sentenced to a term of 26 years. Although he may only be required to serve 26 years' imprisonment because of his eligibility for day-for-day good conduct credit, the decisions in *Peacock*, *Thornton*, and *Daniel* are clear that our concern is the term actually imposed by the circuit court, not the procedures employed by IDOC. Although the record shows that the resentencing court was aware of defendant's eligibility for day-for-day good conduct credit, as the *Peacock* court explained:

> "The IDOC 'has the right to revoke good-conduct credits for disciplinary infractions, [and] an inmate's right to receive the credits is contingent upon his good behavior while in prison.' [Citations]. The IDOC 'ultimately has discretion as to whether defendant will be awarded any credit,' and the trial court has no control over the manner in which a defendant's good-conduct credit is earned or lost. [Citation]." *Peacock*, 2019 IL App (1st) 170308, ¶ 19.

¶ 35    As such, we find that defendant's 52-year sentence for an offense he committed when he was a juvenile represents a *de facto* life sentence. We must therefore conclude that defendant's sentence violates the eighth amendment and we vacate that sentence as unconstitutional. See *Peacock*, 2019 IL App (1st) 170308, ¶ 24; *Thornton*, 2020 IL App (1st) 170677, ¶ 25. Although defendant requests that this court reduce his sentence to "time served," based on his expected

release date in July 2021, we find that the appropriate remedy in this case is to remand for a new sentencing hearing where defendant will be entitled to be sentenced under the scheme prescribed by section 5-4.5-105 of the Unified Code of Corrections. 735 ILCS 5/5-4.5-105 (West 2016). See, *e.g.*, *Thornton*, 2020 IL App (1st) 170677, ¶ 26 (citing *Buffer*, 2019 IL 122327, ¶ 47).

¶ 36    Because we find that defendant's sentence is unconstitutional and vacate it on that basis, we need not address defendant's contention that his sentence is excessive.

¶ 37                                III. CONCLUSION

¶ 38    For the reasons stated, we vacate defendant's 52-year sentence, and remand the cause for resentencing consistent with this decision.

¶ 39    Sentence vacated and cause remanded for resentencing, with directions.