2022 IL App (1st) 172267-UB

No. 1-17-2267

Filed January 27, 2022

Fourth Division

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 90 CR 16142 |
| | ) | |
| HORTEZ DANIEL, | ) | Honorable |
| | ) | James B. Linn, |
| Defendant-Appellant. | ) | Judge, Presiding |

JUSTICE MARTIN delivered the judgment of the court.
Presiding Justice Delort and Justice Rochford concurred in the judgment.

**ORDER**

¶ 1     *Held*: Defendant's 70-year prison term with eligibility for day-for-day, good conduct credit is not a *de facto* life sentence and, therefore, defendant failed to make a substantial showing of a constitutional violation to warrant an evidentiary hearing or postconviction relief.

¶ 2     Hortez Daniel was sentenced to 70 years in prison for first degree murder and related offenses he committed as a juvenile in 1990. In 2017, he appealed the circuit court's dismissal of his successive postconviction petition that challenged his sentence pursuant to *Miller v. Alabama*, 567 U.S. 460, 479 (2012). Our initial opinion, filed June 30, 2020, reversed the circuit court's dismissal of the petition, vacated his sentence, and remanded for a new sentencing hearing. *People*

*v. Daniel*, 2020 IL App (1st) 172267, ¶¶ 29-30.[1] We found that Daniel's 70-year prison term constituted a *de facto* life sentence imposed without consideration of his youth and its attendant characteristics or rehabilitative potential, as required pursuant to *People v. Buffer*, 2019 IL 122327. *Id.* ¶ 28. The State filed a petition for leave to appeal in the Illinois Supreme Court. On November 24, 2021, the supreme court denied the petition for leave to appeal but issued a supervisory order directing this court to vacate our initial judgment and "consider the effect of [the Illinois Supreme] Court's opinion in *People v. Dorsey*, 2021 IL 123010, on the issue of whether defendant's sentence constitutes a *de facto* life sentence, and determine if a different result is warranted." *People v. Daniel*, No. 126262 (Ill. Nov. 24, 2021) (supervisory order). Upon review of the record and consideration of *Dorsey*, we find a different result is warranted and affirm the circuit court's dismissal of Daniel's successive postconviction petition.

¶ 3                                    I. BACKGROUND

¶ 4        At age 16, Daniel shot and killed 77-year-old Eulice Reese, his grandmother's boyfriend, during a robbery of Reese's apartment where Daniel stole cash his father kept there and used it to purchase a motor scooter. After a bench trial, Daniel was convicted and sentenced to concurrent terms of 70 years for first degree murder, 20 years for armed robbery, and 15 years for residential burglary. This court affirmed his convictions and sentence. *People v. Daniel*, 238 Ill. App. 3d 19 (1992).

¶ 5        In 2012, the United States Supreme Court held that sentencing a juvenile to mandatory life without the possibility for parole violates the eighth amendment to the United States Constitution. *Miller*, 567 U.S. at 479. In 2015, Daniel filed a motion for leave to file a successive postconviction

---

[1]Justice Shelvin Louise M. Hall originally sat on the panel of this appeal and delivered its disposition. Justice Hall is no longer with the appellate court. Therefore, Justice LeRoy K. Martin, Jr. will serve in her stead and has read the briefs, record, and initial order.

petition in the circuit court, claiming that his sentence violated the eighth amendment pursuant to *Miller*. The circuit court granted leave and appointed counsel to assist Daniel in further postconviction proceedings. The State subsequently filed a motion to dismiss the petition arguing that, as a matter of law, Daniel, who was eligible for day-for-day, good conduct credit, was not entitled to relief under *Miller* as he was not serving a natural or *de facto* life sentence. The circuit court agreed and dismissed Daniel's petition without an evidentiary hearing. Daniel appealed.

¶ 6                                    II. ANALYSIS

¶ 7        The Postconviction Hearing Act (Act) (725 ILCS 5/121-1 *et seq.* (West 2014)) enables an imprisoned person to challenge their conviction or sentence collaterally based on constitutional issues that were not, and could not have been, adjudicated on direct appeal. *People v. Pitsonbarger*, 205 Ill. 2d 444, 455-6 (2002). A prisoner commences an action by filing a petition in the circuit court of conviction. 725 ILCS 5/122-1(b) (West 2014). The Act then provides a process with up to three stages to review and adjudicate the petition, the final stage being an evidentiary hearing. *People v. Domagala*, 2013 IL 113688, ¶¶ 32, 34. A petitioner is not entitled to a hearing on their petition. *People v. Coleman*, 183 Ill. 2d 366, 381 (1998). Rather, their petition and its accompanying affidavits and other supporting exhibits must, when taken as true and if unrebutted by the original trial record, make a substantial showing of a constitutional violation to warrant an evidentiary hearing. *Domagala,* 2013 IL 113688, ¶ 35. In addition, the Act contemplates the filing of only one petition. *Pitsonbarger*, 205 Ill. 2d at 456. Any claims not included in an initial petition are forfeited. *Id*. However, a petitioner may seek leave to file a successive petition if the successive petition makes a colorable claim of actual innocence or demonstrates cause for the omission of the claim in the initial petition and resulting prejudice. *People v. Sanders*, 2016 IL 118123, ¶ 24. When a circuit grants a petitioner leave to file a successive petition, the court appoints counsel for the

petitioner if indigent, and affords the petitioner the opportunity to amend the petition with the assistance of counsel. *People v. Bailey*, 2017 IL 121450, ¶ 18. Then, the State may either file an answer or a motion to dismiss. *Id*. ¶ 20. The State may seek dismissal of the petition on any cognizable grounds. *Id.* ¶ 26. Our review of a circuit court's dismissal of a postconviction petition without an evidentiary hearing is *de novo*. *Sanders*, 2016 IL 118123, ¶ 31.

¶ 8        In *Miller*, the United States Supreme Court held that the eighth amendment prohibits mandatory life-without-parole sentences for juvenile offenders. *Id*. The decision recognized that "children are constitutionally different from adults for purposes of sentencing." *Id*. at 471. Children have a "lack of maturity and an underdeveloped sense of responsibility," which leads to "recklessness, impulsivity, and heedless risk-taking." *Id*. Children are also more vulnerable to negative influences and outside pressures, have limited control over their own environment, and "lack the ability to extricate themselves from horrific, crime-producing settings." *Id*. The Court further reasoned that a child's character is not as well-formed as an adult's. *Id*. A child's traits are "less fixed," and their actions are "less likely to be evidence of irretrievable depravity." *Id*. *Miller* applies retroactively to cases on collateral review. *Montgomery v. Louisiana*, 577 U.S. 190 (2016); *People v. Davis*, 2014 IL 115595. Accordingly, the eighth amendment protections of *Miller* apply to Daniel, who was sentenced long before the *Miller* decision.

¶ 9        The Illinois Supreme Court extended *Miller*'s reasoning to provide relief for juveniles who received discretionary life sentences where the trial court failed to consider youth and its attendant characteristics (*People v. Holman*, 2017 IL 120655, ¶ 40) and to *de facto* life sentences—terms of years so long as to be the functional equivalent of life without the possibility of parole (*People v. Reyes*, 2016 IL 119271, ¶ 9). Later, our supreme court determined that "a prison sentence of 40 years or less imposed on a juvenile offender does not constitute a *de facto* life sentence in violation

of the eighth amendment." *Buffer*, 2019 IL 122327, ¶ 41. Rather, such a sentence "provides some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation" in accord with *Miller*. [Internal quotation marks omitted] *Id.*

¶ 10    Following *Buffer*, the appellate court found in several cases that the availability of day-for-day, good conduct credit was not relevant to the determination of whether a term-of-years sentence amounts to *de facto* life. See, *e.g.*, *People v. Peacock*, 2019 IL App (1st) 170308, ¶¶ 18-19, *overruled by Dorsey*, 2021 IL 123010. Applying that reasoning, a juvenile offender with a sentence of 40 or more years would be found to be serving a *de facto* life sentence even if eligible for day-for-day credit that could result in release prior to serving 40 years in prison. Such defendants would, therefore, be entitled to a new sentencing hearing unless the sentencing court considered factors of youth and its attendant characteristics, which Illinois courts have referred to as the *Miller* or *Holman* factors. See *Holman*, 2017 IL 120655, ¶ 46; see also 730 ILCS 5/5-4.5-105 (West 2016) (Illinois's statutory requirement for consideration of such factors). Daniel's 70-year sentence was, of course, greater than the 40-year line drawn in *Buffer*. However, Daniel was eligible to receive day-for-day credit since his offense occurred before the enactment of the Truth-in-Sentencing Act, which disqualified persons convicted of first degree murder from day-for-day credit and required the prison term to be served in full. See 730 ILCS 5/3-6-3(a)(2)(i) (West 1998); Pub. Act 90-535, § 40 (eff. June 19, 1998). With day-for-day credit, Daniel could be released on parole (mandatory supervised release) upon serving 35 years—under *Buffer*'s 40-year ceiling.

¶ 11    Subsequent to our initial order in this case, in *Dorsey*, our supreme court considered the effect of eligibility for day-for-day credit on the determination of whether a juvenile offender's sentence constitutes *de facto* life. The defendant in *Dorsey* was sentenced to an aggregate term of

76 years after being convicted of first degree murder and two attempted first degree murders he committed at age 14. *Dorsey*, 2021 IL 123010, ¶¶ 4-5, 19. Like Daniel, Dorsey was eligible to receive day-for-day credit since his crimes were committed in 1996, before truth-in-sentencing took effect. *Id*. ¶ 50. The court held that Dorsey's 76-year term was not a *de facto* life sentence—the functional equivalent of life without the possibility of parole—because, with day-for-day credit eligibility, Dorsey had "an opportunity to demonstrate maturity and rehabilitation" upon serving 38 years, within the 40-year boundary established in *Buffer*. *Id*. The day-for-day credit scheme is "designed to encourage rehabilitation and enable an offender to be released after he serves half of the determinate sentence." *Id*. ¶ 52. The court remarked that day-for-day credit eligibility is "at least on par with discretionary parole for a life sentence," which complies with the eighth amendment under *Miller*. *Id*. ¶ 54. Thus, the court concluded that if a juvenile offender, with eligibility for good conduct credit, can be released from prison after serving 40 years or less, the sentence does not constitute a *de facto* life sentence. *Id*. ¶¶ 1, 65.

¶ 12    The *Dorsey* opinion squarely addresses the issue in this case. With day-for-day credit, Daniel could be for released upon serving 35 years in prison—a shorter term than the sentence reviewed in *Dorsey*. Indeed, the Illinois Department of Corrections' (IDOC) website lists Daniel's projected parole date as June 2024.[2] He will be 50 years old. See *People v. Johnson*, 2021 IL 125738, ¶ 54 (courts may take judicial notice of records displayed on the IDOC website). Pursuant to *Dorsey*, Daniel is, therefore, afforded a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. His 70-year term of imprisonment, with eligibility for day-for-day credit, is not a *de facto* life sentence.

---

[2]If released in June 2024, Daniel will have served just under 34 years. The record before us does not disclose how Daniel could be released before serving half of his 70-year sentence. He may have earned additional sentencing credit by, for example, completing certain programming in IDOC. IDOC ultimately determines such credit and a prisoner's release date.

¶ 13                                  III. CONCLUSION

¶ 14         Since Daniel is not serving a *de facto* life sentence, his postconviction petition failed to

make a substantial showing of a constitutional violation. Accordingly, we affirm the circuit court's

dismissal of the petition.

¶ 15         Affirmed.