2021 IL App (1st) 182084-U
Order filed: May 28, 2021

FIRST DISTRICT
FIFTH DIVISION

No. 1-18-2084

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 85 C 14394 |
| | ) | |
| MELKY TERRY, | ) | Honorable |
| | ) | Stanley L. Hill, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Delort and Justice Hoffman concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Defendant's sentences are vacated and this matter is remanded for resentencing, where defendant was given a *de facto* life sentence for crimes he committed as a juvenile in violation of the eighth amendment of the United States Constitution.

¶ 2    Having been originally sentenced to a term of natural life in prison and then granted a new sentencing hearing, defendant-appellant, Melky Terry, was resentenced to consecutive sentences of 75 years' imprisonment for murder and 15 years' imprisonment for voluntary manslaughter. Defendant has appealed, and for the following reasons, we vacate defendant's sentences and remand for resentencing.

¶ 3    In 1987, defendant was convicted of the murder of 11-year-old John Marcatante and the voluntary manslaughter of 16-year-old Grace Marcatante. The offenses occurred in 1985, when

defendant was age 17. He was sentenced to a term of natural life in prison for murder and a concurrent term of 30 years' imprisonment for voluntary manslaughter. Defendant's convictions and sentences were affirmed on direct appeal. *People v. Terry*, 1-87-1226 (1990) (unpublished order under Illinois Supreme Court Rule 23). He thereafter filed several unsuccessful postconviction petitions.

¶ 4      In 2013, defendant sought leave to file a successive postconviction petition asserting that his natural life sentence, imposed for a crime he committed as a juvenile, was unconstitutional pursuant to the decision in *Miller v. Alabama*, 567 U.S. 460 (2012). Leave to file that petition was granted and—after the State conceded error—the circuit court granted defendant's petition, vacated his sentences, and ordered a new sentencing hearing. The parties filed extensive, written sentencing memoranda in preparation for that hearing.

¶ 5      The sentencing hearing was held over the course of three days in July and August of 2018. At the hearing, defendant elected to be sentenced under the law in effect in 1985, which notably would entitle him to day-for-day good-conduct credit on any term-of-years sentence imposed. See Ill. Rev. Stat. 1985, ch. 38, ¶ 1003-6-3(a)(2). The circuit court heard victim impact testimony from a family member of the victims. The court also heard testimony from three defense witnesses: a former Illinois Department of Corrections (IDOC) chief of operations, Richard Bard, a mitigation expert, Michael Dennis, and an expert in developmental psychology, Dr. James Garbarino. Defendant made a statement in allocution.

¶ 6      Hundreds of pages of exhibits were introduced into evidence at the hearing, including 28 by the State, 12 by defendant, and 8 by the circuit court. These exhibits included transcripts and exhibits from defendant's trial, an updated presentence investigation report, defendant's IDOC disciplinary and mental health records, six written victim impact statements, four letters from

defendant's family, a study on the life expectancy of prisoners, and reports from defendant's defense experts.

¶ 7    Following closing arguments from the parties, the circuit court sentenced defendant to 75 years' imprisonment for murder and 15 years' imprisonment for voluntary manslaughter. These sentences were ordered to be served consecutively, because the two offenses did not result from a single course of conduct. To arrive at these sentences, the circuit court reviewed the extensive evidence in a 13-page written order. The circuit court specifically concluded that this evidence revealed that defendant's crimes were consistent with "characteristic adolescent issues" as he may have "lacked maturity[,] had an underdeveloped sense of responsibility which led to poor decision making" and may have "been more susceptible to negative influences and peer pressure." The circuit court also found that defendant "may be capable of change." As such, defendant was not among "the rarest cases where there is permanent incorrigibility" and therefore he should not be sentenced to either life without parole or a *de facto* life sentence.

¶ 8    Nevertheless, the circuit court also recognized the need to balance these factors with the gravity and circumstances of the offense. Ultimately, the circuit court concluded that an aggregate sentence of 90 years' imprisonment, eligible for day-for-day good-conduct credit, was appropriate because: (1) defendant was in good health and could therefore be released after only 45 years, at a time when he would not yet have reached the 64-year average life expectancy for all prisoners, and (2) a 90-year, aggregate sentence therefore complied with *Miller* because "it provides a meaningful opportunity for release within his life expectancy given defendant's good health." Defendant's motion to reconsider his sentences was denied, and he has now appealed.

¶ 9    On appeal, defendant contends that his 90-year, aggregate sentence constituted an improper *de facto* life sentence considering the circuit court's specific finding that defendant was not

permanently incorrigible and should therefore not be sentenced to either life without parole or a *de facto* life sentence. The State responds—in part—by contending that we should focus our analysis only upon his 75-year sentence for murder, considering the circuit court's finding that the two offenses did not result from a single course of conduct. See *People v. DiCorpo*, 2020 IL App (1st) 172082, ¶ 48 (recognizing that the proper focus of the legal analysis in this context appears to be an open question). We need not resolve this specific dispute, as we conclude either the 75-year sentence alone or the 90-year, aggregate sentence constitutes an improper *de facto* life sentence.

¶ 10    In *Roper v. Simmons*, 543 U.S. 551, 574-75 (2005), the Supreme Court found that the death penalty was unconstitutional as applied to minors. In *Graham v. Florida*, 560 U.S. 48, 82 (2010), the Supreme Court held that "[t]he Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide." Then, in *Miller v. Alabama*, 567 U.S. 460, 479 (2012), the Supreme Court concluded that the eighth amendment "forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders" convicted of homicide. In each case, the Supreme Court relied in part on the lesser moral culpability and greater rehabilitative potential of minors in support of its decisions. "[I]t is clear the United States Supreme Court in *Roper*, *Graham*, and *Miller* has provided juveniles with more constitutional protection than adults." *People v. Pacheco*, 2013 IL App (4th) 110409, ¶ 68.

¶ 11    However, *Miller* itself did not impose an outright ban on the imposition of a life sentence upon a juvenile offender convicted of homicide, let alone a ban on lengthy term-of-years sentences imposed upon juvenile offenders. See, *Miller*, 567 U.S. 479-80 (refusing to completely foreclose the possibility that a life sentence could be constitutionally imposed upon a juvenile convicted of homicide). Rather, the Supreme Court held that such a sentence could not be *mandated*, and before

a life sentence could be properly imposed "mitigating circumstances" such as "an offender's youth and attendant characteristics" must be considered. *Id.* at 483, 489. The Supreme Court did so because "[s]uch mandatory penalties, by their nature, preclude a sentencer from taking account of an offender's age and the wealth of characteristics and circumstances attendant to it." *Id.*, at 476. Without taking into account such circumstances, the sentencer cannot assess "whether the law's harshest term of imprisonment proportionately punishes a juvenile offender." *Id.*, at 474.

¶ 12     In *Montgomery v. Louisiana*, 577 U.S. 190, 212(2016), the Supreme Court determined that *Miller* announced a new substantive rule that must be given retroactive application. The Supreme Court did so after recognizing "*Miller*'s substantive holding that life without parole is an excessive sentence for children whose crimes reflect transient immaturity" and that sentencing a child whose crime reflects transient immaturity to life without parole "is disproportionate under the Eighth Amendment." *Id.* at 211-12.

¶ 13     The Illinois Supreme Court subsequently ruled that *Miller* also applies to discretionary life sentences. *People v. Holman*, 2017 IL 120655, ¶ 40. It has also concluded that *Miller* applies to *de facto* life sentences, or sentences "that cannot be served in one lifetime" and have "the same practical effect on a juvenile defendant's life as would an actual mandatory sentence of life without parole." *People v. Reyes*, 2016 IL 119271, ¶¶ 9-10.

¶ 14     Thus, our supreme court has recognized that while a juvenile offender may be sentenced to a natural life or *de facto* sentence of life imprisonment in Illinois, before doing so the circuit court must:

"[D]etermine[ ] that the defendant's conduct showed irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation. The court may make that decision only after considering the defendant's youth and its

- 5 -

attendant characteristics. Those characteristics include, but are not limited to, the following factors: (1) the juvenile defendant's chronological age at the time of the offense and any evidence of his particular immaturity, impetuosity, and failure to appreciate risks and consequences; (2) the juvenile defendant's family and home environment; (3) the juvenile defendant's degree of participation in the homicide and any evidence of familial or peer pressures that may have affected him; (4) the juvenile defendant's incompetence, including his inability to deal with police officers or prosecutors and his incapacity to assist his own attorneys; and (5) the juvenile defendant's prospects for rehabilitation." *Holman*, 2017 IL 120655, ¶ 46.

¶ 15    More recently—and importantly, after the defendant was resentenced by the circuit court—our supreme court concluded that the imposition of any sentence exceeding 40 years for a juvenile offender amounts to a *de facto* life sentence, requiring the sentencing court to first consider defendant's "youth and its attendant circumstances." *People v. Buffer*, 2019 IL 122327, ¶¶ 41-42. In addition, this court has held—again, in a decision issued after defendant was resentenced—that courts should not consider the possibility of any good-conduct sentencing credit when determining whether a sentence constitutes a *de facto* life sentence. *People v. Peacock*, 2019 IL App (1st) 170308, ¶¶ 18-19. This holding has been reaffirmed repeatedly by this court. *DiCorpo*, 2020 IL App (1st) 172082, ¶¶ 53-54; *People v. Thornton*, 2020 IL App (1st) 170677, ¶ 21; *People v. Hill*, 2020 IL App (1st) 171739, ¶ 41; *People v. Quezada*, 2020 IL App (1st) 170532, ¶ 14.

¶ 16    Even more recently—and after the parties filed their briefs in this appeal—the Supreme Court issued an opinion in *Jones v. Mississippi*, __ U.S. __, 141 S. Ct. 1307 (2021). Therein, it considered a discretionary sentence of life without parole imposed upon a juvenile offender where the sentencer nevertheless had discretion to "consider the mitigating qualities of youth" and impose

a lesser punishment. *Id*. at 1311. The Supreme Court concluded that in such circumstances, the eighth amendment does not *require* a court imposing a sentence of life without parole to make "a separate factual finding that the defendant is permanently incorrigible, or at least provide an on-the-record sentencing explanation with an implicit finding that the defendant is permanently incorrigible." *Id*. at 1318. Importantly, however, the Supreme Court explicitly stated that the decision in that case "does not overrule *Miller* or *Montgomery*." *Id*. at 1321.

¶ 17    As noted above, our supreme court has required courts to determine that a defendant's conduct showed irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation before sentencing a juvenile offender to a natural life or *de facto* sentence of life imprisonment. *Holman*, 2017 IL 120655, ¶ 46. To the extent that this requirement is grounded in the eighth amendment, the impact of *Jones* on this requirement is unclear. Moreover, under *Jones* if the circuit court here simply failed to make an explicit or implicit finding of defendant's permanent incorrigibility, there would likely be no eighth amendment violation because the circuit court clearly considered defendant's youth and its attendant circumstances at resentencing. However, neither that legal issue nor that factual circumstance is presented here.

¶ 18    Rather, here the record clearly reflects that the circuit court carefully considered all the relevant sentencing factors, including defendant's youth and its attendant characteristics. Based upon that consideration, the circuit court specifically concluded that defendant's crimes were consistent with "characteristic adolescent issues," defendant was not among "the rarest cases where there is permanent incorrigibility," and therefore he should not be sentenced to either life without parole or a *de facto* life sentence. Indeed, having made the explicit finding that defendant's crimes reflected transient immaturity, any such sentence would clearly violate the eighth

amendment under *Miller* and *Montgomery*, which *Jones* specifically did not overrule.

¶ 19    Nevertheless, the circuit court proceeded to impose a 75-year sentence upon defendant for murder and a consecutive sentence of 15-years' imprisonment for voluntary manslaughter. Whether we focus on the 75-year sentence alone or the 90-year, aggregate sentence, defendant's term of imprisonment clearly constitutes a *de facto* life sentence pursuant to the decisions in *Buffer* and *Peacock*. While the State asserts that *Peacock* was wrongly decided, we decline to reject the consistent line of authority ruling otherwise. *Supra*, ¶ 15. Because "the trial court's sentence of *de facto* life for defendant[] is in conflict with its determination that a life sentence was not warranted," it violates the eighth amendment and must be vacated. *DiCorpo*, 2020 IL App (1st) 172082, ¶ 54.

¶ 20    Having concluded that defendant's sentence constituted an improper *de facto* life sentence in violation of the eighth amendment, we turn to the proper remedy. Defendant first requests that this court independently impose an aggregate 40-year term of imprisonment—the maximum that would be allowable under *Buffer* considering the finding that he was not permanently incorrigible—pursuant to our authority to "reduce the punishment imposed by the trial court" under Illinois Supreme Court Rule 615(b)(4) (eff. Jan. 1, 1967).

¶ 21    We certainly have the authority to impose a new sentence. *People v. Jones*, 168 Ill. 2d 367, 378 (1995); Ill. S. Ct. R. 615(b)(4) (eff. Jan. 1, 1967). However, we use this power " 'cautiously and sparingly,' " considering "all of the surrounding circumstances of each particular case," including: (1) whether there was additional evidence to offer on remand, (2) whether the proof presented to the circuit court the first time was "relatively straightforward and uncomplicated," and (3) whether remand for resentencing would unnecessarily burden the court and the parties. *Jones*, 168 Ill. 2d at 378.

¶ 22    Here, while defendant contends that there would be no new evidence introduced upon remand, we disagree. At the 2018 resentencing hearing, the parties introduced extensive evidence of defendant's IDOC records to evaluate his rehabilitative potential. That information is now nearly three years out-of-date. This court has previously refused to simply impose a 40-year sentence under similar circumstances where we lacked relevant and current information, such as defendant's current IDOC records. *DiCorpo*, 2020 IL App (1st) 172082, ¶ 59. In addition, the surrounding circumstances of this case have obviously been significantly altered by the decisions in *Buffer* and *Peacock*. Furthermore, as detailed above (*supra*, ¶¶ 5-6) the evidence introduced at defendant's resentencing hearing was far from straightforward and uncomplicated.

¶ 23    While remand will obviously burden the circuit court and the parties, we find that burden to be necessary. The sentences from which defendant has appealed was clearly the result of the circuit court's careful evaluation of the extensive evidence introduced, its conclusion that defendant should not be sentenced to either life without parole or a *de facto* life sentence, and its balancing of the need to craft some lesser sentence with the gravity and circumstances of the offense. "It has been emphasized that the trial court is in a superior position to assess the credibility of the witnesses and to weigh the evidence presented at the sentencing hearing." *People v. Jones*, 168 Ill. 2d 367, 373 (1995). Thus, it is the circuit court that should have the opportunity to resentence defendant after considering the decisions in *Buffer* and *Peacock*, as well as any additional evidence that may be introduced upon remand.

¶ 24    Finally, we consider defendant's alternative request that we remand for resentencing before a different judge, because here the circuit court improperly relied on its "own opinion of what was relevant, cross-examined the defense experts at length, and even introduced his own 'Court Exhibits' at the hearing and into the record." Defendant contends that these actions establish that

the circuit court improperly took on the role of advocate and based its sentences upon its private investigation or knowledge. We disagree.

¶ 25 First, we fail to understand defendant's contention that the circuit court improperly "relied on his own opinion of what was relevant," and defendant provides no further clarification or specific examples. Certainly, the rigid rules of evidence applicable during trial are not required at sentencing, the discretion of the circuit court in hearing evidence and determining appropriate sentences is broad, and relevance and reliability are important factors in the circuit court's consideration of evidence introduced at sentencing. *People v. Jackson*, 149 Ill. 2d 540, 547-49 (1992). Without more explanation from defendant, we cannot say that any of the circuit court's relevancy determinations reflected any bias.

¶ 26 Second, it has long been recognized that the circuit court has the authority to question witnesses to elicit the truth or to bring enlightenment on material issues that seem obscure. *People v. Palmer*, 27 Ill. 2d 311, 314(1963); see also Ill. R. Evid. 614(b) (eff. Jan. 1, 2011) ("The court may interrogate witnesses, whether called by itself or by a party."). Whether such examination has been properly conducted, however, "must be determined by the circumstances of each case, and rests largely in the discretion of the trial court." *Palmer*, 27 Ill.2d at 315. This is especially true where the questioning does not take place before a jury, as the danger of prejudice in that circumstance is lessened. *Id*.

¶ 27 We have examined the circuit court's questions and comments specifically cited by defendant and find that they were appropriate attempts to clarify the evidence and testimony presented by the parties. While some of the circuit court's questioning could perhaps be described as lengthy, we note that the evidence presented was extensive and no jury was present during this questioning. In sum, the circuit court's inquiries were appropriate.

¶ 28    Third, while defendant generally complains that the circuit court improperly relied upon exhibits it introduced into evidence itself, he specifically complains as to only two categories of such exhibits: (1) a "Michigan Life Expectancy Data" study, and (2) printouts of the circuit court's "date difference calculations." As to the former, it is evident from the record—and defendant concedes—that while the life expectancy study was not introduced into evidence by defendant, defendant did provide it to the circuit court and did rely upon it in his closing argument. The issue is not whether it was proper as an evidentiary matter for the circuit court to rely upon this study, a claim that defendant does not raise on appeal. The issue is whether the use of a study provided by defendant himself shows improper bias such that a new judge should be appointed upon remand. We find that it does not.

¶ 29    As to the "date difference calculations" the circuit court entered into evidence, these exhibits clearly detail only the circuit court's mathematical calculations of how old defendant would be when he could be released based upon the sentences imposed, accounting for presentence credit and the possibility of day-for-day good-conduct sentencing credit. The circuit court was not introducing new evidence based upon its private investigation or knowledge. As such, we deny defendant's request that we remand for resentencing before a different judge.

¶ 30    For the foregoing reasons, defendant's sentences are vacated and this matter is remanded for resentencing.

¶ 31    Sentences vacated; remanded for resentencing.