# Illinois Official Reports

## Appellate Court

---

### *People v. Thornton*, 2020 IL App (1st) 170677

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALTAI THORNTON, Defendant-Appellant. |
| District & No. | First District, Fifth Division<br>No. 1-17-0677 |
| Filed<br>Rehearing denied | January 10, 2020<br>March 5, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 95-CR-24520; the Hon. Brian Flaherty, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Bryon M. Reina, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Mari R. Hatzenbuehler, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE HOFFMAN delivered the judgment of the court, with opinion.<br>Justices Rochford and Delort concurred in the judgment and opinion. |

¶ 1    The defendant, Altai Thornton, appeals from an order of the circuit court of Cook County, dismissing his *pro se* petition for relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). On appeal, he raises the following two arguments: (1) he stated an arguable claim that his 70-year sentence, for a crime he committed as a juvenile, is an unconstitutional *de facto* life sentence and (2) we should remand his cause because the circuit court failed to properly admonish him pursuant to *People v. Shellstrom*, 216 Ill. 2d 45 (2005), before recharacterizing his petition. For the reasons that follow, we vacate the defendant's sentence and remand the matter for a new sentencing hearing.

¶ 2    On March 4, 1999, the defendant entered an open guilty plea to four counts of first degree murder and one count of aggravated kidnapping, stemming from the killing of Tommy Glass. In exchange for the defendant's guilty plea, the state agreed to cap its sentencing recommendation at 60 years' imprisonment. Before accepting the defendant's guilty plea, the circuit court admonished him pursuant to Illinois Supreme Court Rule 402 (eff. July 1, 1997), informing him that "the possible sentences on this case for first degree murder is 20 to 60 years *** [and] [w]ith a showing of cruel and heinous conduct *** an extended term sentence would be from 60 to 100 years, or in [the defendant's] case natural life." The defendant responded that he understood. In response to further questioning by the circuit court, the defendant also acknowledged that he understood he would give up his right to a jury trial and that his plea was made freely and voluntarily.

¶ 3    The factual basis for the plea established the following. On December 27, 1994, the defendant, who was 17 years old at the time, and four codefendants abducted Glass, a member of a rival gang. After binding Glass's arms and legs, the defendant, along with his codefendants, kicked and beat Glass, struck him over the head with a paint can, pushed his face onto lit stovetop burners, pushed him down a hill toward a canal, weighed down his clothing with rocks, and then held him underwater until he drowned.

¶ 4    At the sentencing hearing, the State presented evidence in aggravation of the defendant's involvement in a subsequent shooting. The State also presented a victim impact statement from Glass's sister. In mitigation, the defendant presented testimony from his mother and sister. In allocution, the defendant apologized, accepted responsibility for his actions, and asked for mercy.

¶ 5    The circuit court found the defendant's actions were cruel and heinous. In announcing its decision, the circuit court stated that the defendant was "starting down the wrong path at an early, early age." The circuit court then merged the aggravated kidnapping count into the first degree murder count based on felony kidnapping and sentenced the defendant to four concurrent extended terms of 70 years' imprisonment in the Illinois Department of Corrections (IDOC).

¶ 6    On direct appeal, we reduced the defendant's sentence to concurrent terms of 60 years' imprisonment. *People v. Thornton*, No. 1-99-1045 (2000) (unpublished order under Illinois Supreme Court Rule 23). On May 30, 2002, our supreme court directed us to vacate our order and reconsider our judgment in light of its decision in *People v. Jackson*, 199 Ill. 2d 286 (2002). *People v. Thornton*, 199 Ill. 2d 575 (2002) (supervisory order).

¶ 7        On remand to this court, the defendant argued that the circuit court erred by entering convictions and imposing sentences on four counts of first degree murder when there was only one victim and that his 70-year sentence violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000). We vacated three of the four counts of first degree murder, affirmed the remaining count of first degree murder, and affirmed the defendant's 70-year sentence. *People v. Thornton*, 1-99-1045 (2002) (unpublished order under Illinois Supreme Court Rule 23).

¶ 8        On January 19, 2016, the defendant filed a *pro se* "Petition to Vacate Judgment under Section 2-1401(f)." In the petition, the defendant alleged the following: (1) his indictment was void for failing to allege brutal and heinous conduct; (2) his 70-year extended-term sentence violated *Apprendi*; (3) the extended-term sentencing statute, along with several others, was unconstitutional because it did not require the State to charge brutal and heinous conduct; (4) the concurrent and consecutive sentencing statutes violated *Apprendi* and are void *ab initio*; and (5) both his trial and appellate counsel were ineffective. On September 23, 2016, the State filed a motion to dismiss the petition.

¶ 9        On October 7, 2016, the defendant filed a *pro se* "Motion to Recharacterize the Pending 2-1401 Petition as a Post-Conviction Petition" under the Act. During proceedings before the circuit court, the State noted that the defendant had to be admonished pursuant to *Shellstrom* "and then it goes into a Stage 1 determination." Thereafter, the defendant and the circuit court had the following colloquy:

> "THE COURT: Do you understand if I allow this, this will be your one and only chance to file a post-conviction petition. Do you understand that?
>
> DEFENDANT: I understand. As I was going through it, I was trying to understand the constitutional issues. My whole point was to preserve the constitutional issues that I was trying to raise in my petition, and that's why I raised the 2-1401. So when I found out that I couldn't preserve my constitutional issue, that's why I wanted to characterize it as a post-conviction petition.
>
> THE COURT: But I just want to let you know if you do characterize it, this is your one and only chance to file a post-conviction, and you won't get another chance to do it.
>
> DEFENDANT: All right.
>
> THE COURT: And so all the issues you're going to raise in your post-conviction need to be raised in this one.
>
> DEFENDANT: I understand.
>
> THE COURT: And so you can't say I'll come back later on and say I forgot to do this.
>
> DEFENDANT: I understand that, yes.
>
> THE COURT: Okay."

The circuit court granted the defendant's motion.

¶ 10        On December 15, 2016, the defendant filed a motion for leave of court to file amended post-conviction petition, in which he sought to add additional claims. The defendant simultaneously filed an "Amended Post-Conviction Petition," containing all of the claims raised in his initial petition, as well as two new allegations. The first new claim alleged that his extended-term sentence violated his due process rights because it was based on facts not alleged in the indictment. The second new claim alleged that his sentencing hearing violated

the eighth amendment of the United States Constitution, pursuant to *Miller v. Alabama*, 567 U.S. 460 (2012), because the circuit court failed to properly consider his youth before determining his sentence.

¶ 11　　On January 27, 2017, the circuit court summarily dismissed the defendant's *pro se* postconviction petition as frivolous and patently without merit. In so holding, the circuit court found that the sentencing judge informed the defendant that he was eligible for an extended-term sentence based on cruel and heinous conduct. The circuit court noted that the extended-term statute had been repeatedly found constitutional and found the defendant's allegations of ineffective assistance of counsel contradicted by the record. The circuit court stated that the defendant cited "a lot of cases" in support of a due process claim "and none of the cases show that his due process rights" were violated. The circuit court did not address the defendant's claim that his sentencing hearing violated *Miller*. This appeal followed.

¶ 12　　On appeal, the defendant first argues that the circuit court erred in summarily dismissing his *pro se* petition because he raised an arguable claim that his 70-year sentence, imposed for a crime he committed while he was a juvenile, violated the eighth amendment to the United States Constitution (U.S. Const., amends. VIII, XIV) pursuant to *Miller* and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11).

¶ 13　　The Act provides a procedural mechanism through which a petitioner may assert a substantial denial of his constitutional rights in the proceedings that resulted in his conviction. 725 ILCS 5/122-1 (West 2016). At the first stage, where this petition currently lies, the trial court independently reviews the petition, takes all allegations as true, and determines whether the petition is "frivolous or patently without merit." *People v. Hodges*, 234 Ill. 2d 1, 10 (2009).

¶ 14　　The trial court may summarily dismiss a petition "as frivolous or patently without merit only if the petition has no arguable basis either in law or in fact," meaning that it is "based on an indisputably meritless legal theory or a fanciful factual allegation," such as a legal theory that is "completely contradicted by the record." *Hodges*, 234 Ill. 2d at 12, 16. In this stage, the allegations of fact are considered true, "so long as those allegations are not affirmatively rebutted by the record." *People v. Thomas*, 2014 IL App (2d) 121001, ¶ 47. We must construe postconviction petitions "liberally" and "allow borderline petitions to proceed." *Thomas*, 2014 IL App (2d) 121001, ¶ 5. Our review of the trial court's dismissal of a postconviction petition is *de novo*. *Hodges*, 234 Ill. 2d at 9.

¶ 15　　In *Miller*, the United States Supreme Court held that the eighth amendment to the United States Constitution "forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Miller*, 567 U.S. at 479. The Court emphasized that "[m]andatory life without parole for a juvenile precludes consideration" of numerous mitigating factors, including the juvenile's age and its "hallmark features," and the possibility of rehabilitation. *Miller*, 567 U.S. at 477-78. Additionally, the Court held that "a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." *Miller*, 567 U.S. at 489. In *Montgomery v. Louisiana*, 577 U.S. ___, ___, 136 S. Ct. 718, 725 (2016), the Court clarified that *Miller* applies retroactively "to juvenile offenders whose convictions and sentences were final when *Miller* was decided," including cases on collateral review.

¶ 16　　The Illinois Supreme Court has ruled that *Miller* applies to discretionary as well as mandatory life sentences (*People v. Holman*, 2017 IL 120655, ¶ 40) and also to *de facto* life sentences or sentences "that cannot be served in one lifetime" and have "the same practical

effect on a juvenile defendant's life as would an actual mandatory sentence of life without parole" (*People v. Reyes*, 2016 IL 119271, ¶¶ 9-10). Recently, our supreme court in *People v. Buffer*, 2019 IL 122327, ¶¶ 41-42, concluded that a sentence exceeding 40 years was a *de facto* life sentence, requiring the sentencing court to consider the "defendant's youth and its attendant characteristics."

¶ 17        The defendant maintains that his 70-year sentence is a *de facto* life sentence, triggering the protections of *Miller* and requiring a sentencing court to consider his youth and attendant circumstances in fashioning a sentence. He argues that the record from his sentencing hearing demonstrates that the circuit court did not consider such factors. Consequently, he contends that he has stated an arguable claim that he was denied his constitutional rights and the circuit court erred in summarily dismissing his petition.

¶ 18        The State responds that the defendant was sentenced prior to the "truth-in sentencing" statute being enacted and is, therefore, entitled to day-for-day credit. See 730 ILCS 5/3-6-3(a)(2) (West 1994) ("[T]he prisoner shall receive one day of good conduct credit for each day of service in prison other than where a sentence of 'natural life' has been imposed. Each day of good conduct credit shall reduce by one day the inmate's period of incarceration set by the court."). As a result, the State maintains it is "likely" the defendant will only be required to serve a term of 35 years, allowing him to be released when he is 54 years old.[1] Consequently, the State argues that we should consider the defendant's sentence as a 35-year term, which is below the 40-year mark for a *de facto* life sentence pursuant to *Buffer*, and not a 70-year term.

¶ 19        The defendant acknowledges that he may qualify for day-for-day credit that would require him to serve only 35 years of his 70-year sentence. He nevertheless contends that we should consider his sentence as a *de facto* life sentence for the following two reasons: (1) there is no guarantee that he will receive the day-for-day credit and (2) even if he did receive such credit, it remains highly unlikely that he will outlive his 35-year sentence, given the life expectancy of black men who have served time in prison.

¶ 20        Recently, in *People v. Peacock*, 2019 IL App (1st) 170308, *appeal filed*, No. 125340 (Ill. Oct. 4, 2019), a panel of this court addressed this issue and concluded that the availability of statutory sentencing credit is irrelevant to the determination of whether a defendant has been sentenced to a *de facto* life sentence. The *Peacock* court explained its conclusion as follows:

> "Defendant was not sentenced to 40 years' imprisonment but was instead sentenced to 80 years' imprisonment with the mere possibility of release after 40 years. Moreover, to serve a sentence of 40 years, he must receive every single day of good conduct credit for which he could be eligible. Defendant's receipt of day-for-day credit is not guaranteed. [Citations.] The IDOC 'has the right to revoke good-conduct credits for disciplinary infractions, [and] an inmate's right to receive the credits is contingent upon his good behavior while in prison.' [Citations.] The IDOC 'ultimately has discretion as to whether defendant will be awarded any credit,' and the trial court has no control over the manner in which a defendant's good conduct credit is earned or lost. [Citation.] Accordingly, we conclude that defendant's 80-year sentence, for which he may receive day-for-day credit, constitutes a *de facto* life sentence." *Peacock*, 2019 IL App (1st) 170308, ¶ 19.

---

[1] According to the IDOC inmate database, of which we take judicial notice, the defendant's projected parole date is March 5, 2032. See *People v. Mitchell*, 403 Ill. App. 3d 707, 709 (2010).

¶ 21    The State argues that *Peacock* erred in concluding that the availability of statutory sentencing credit is irrelevant to determining whether a sentence amounts to an unconstitutional sentence under *Miller* and its progeny. Specifically, the State contends *Miller* makes clear that only sentences that are the equivalent of a life sentence *without parole* violate the eighth amendment. See *Miller*, 567 U.S. at 479. In support, the State cites *Miller*'s determination that " '[a] State is not required to guarantee eventual freedom' " to a juvenile offender but must only provide " 'some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.' " *Miller*, 567 U.S. at 479 (quoting *Graham v. Florida*, 560 U.S. 48, 75 (2010)). The State thus maintains that a defendant who is statutorily entitled to cut his sentence in half by exhibiting good behavior while in prison has been afforded such an opportunity. See *People v. Evans*, 2017 IL App (1st) 143562, ¶ 14 (finding that a defendant who was eligible for day-for-day good conduct credit is "out of the *Miller* category, since he is not serving a sentence without the possibility of parole"). In other words, the State argues that the defendant's sentence is a *de facto* life sentence with the possibility of parole and, therefore, it is outside of *Miller*'s scope. We disagree.

¶ 22    We acknowledge that *Miller* and its progeny focus on life sentences without the possibility of parole and the defendant's sentence does include the possibility of release after 35 years served. That said, as *Peacock* noted, day-for-day credit is not guaranteed, and it is IDOC, not the circuit court, that has the ultimate discretion as to whether the defendant will be awarded any credit. *Peacock*, 2019 IL App (1st) 170308, ¶ 19. Moreover, in the instant case, the defendant will not serve a sentence shorter than a 40-year *de facto* life sentence unless he receives a substantial portion of the good conduct credit for which he is eligible. Although the State maintains that "it is more than likely" that the defendant will earn that credit and be released after 35 years' imprisonment, we conclude that the State's assurances are not enough for us to consider the defendant's sentence as anything other than a 70-year term. Accordingly, we conclude that, regardless of the defendant's eligibility for day-for-day credit, his extended term of 70 years' imprisonment is a *de facto* life sentence that requires a sentencing court to consider his youth and attendant circumstances.

¶ 23    We also conclude that the circuit court failed to consider the defendant's youth and its attendant circumstances in imposing the defendant's sentence. The State asserts that the record establishes that the circuit court "considered defendant's youth and potential for rehabilitation in imposing sentence." Specifically, the State points out that the circuit court "reviewed the [PSI] report and considered evidence in aggravation and mitigation—including that defendant was 17 years[ ]old at the time of the offense." The State's evidence is unconvincing.

¶ 24    As our supreme court has stated, a juvenile defendant may be sentenced to life or *de facto* life imprisonment, but before doing so, the trial court must do the following:

"[D]etermine[ ] that the defendant's conduct showed irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation. The court may make that decision only after considering the defendant's youth and its attendant characteristics. Those characteristics include, but are not limited to, the following factors: (1) the juvenile defendant's chronological age at the time of the offense and any evidence of his particular immaturity, impetuosity, and failure to appreciate risks and consequences; (2) the juvenile defendant's family and home environment; (3) the juvenile defendant's degree of participation in the homicide and any evidence of familial or peer pressures that may have affected him; (4) the juvenile

defendant's incompetence, including his inability to deal with police officers or prosecutors and his incapacity to assist his own attorneys; and (5) the juvenile defendant's prospects for rehabilitation." *Holman*, 2017 IL 120655, ¶ 46. See also *Buffer*, 2019 IL 122327, ¶ 19.

¶ 25 After reviewing the record, we conclude that the circuit court did not adequately consider the defendant's youth and attendant circumstances before sentencing him to a *de facto* life sentence. As far as we can tell, the circuit court made one comment about the defendant's youth, stating that he was "starting down the wrong path at an early, early age." However, we find nothing in the record to show that the circuit court specifically considered the defendant's youth and its attendant circumstances, such as the factors articulated in *Holman*, when fashioning his sentence. Indeed, the circuit court does not consider the defendant's rehabilitative potential at all. Therefore, we must conclude that the defendant's sentence violates the eighth amendment, and we vacate that sentence as unconstitutional.

¶ 26 Having so determined, we note that the proper remedy is to remand this matter for a new sentencing hearing rather than for further postconviction proceedings. See *Buffer*, 2019 IL 122327, ¶ 47 ("Based on the particular issue raised in this appeal and in the interest of judicial economy, we agree *** that the proper remedy is to vacate defendant's sentence and remand for a new sentencing hearing."). Furthermore, the defendant shall be entitled on remand to be sentenced under the scheme prescribed by section 5-4.5-105 of the Unified Code of Corrections (730 ILCS 5/5-4.5-105 (West 2016)). See *Buffer*, 2019 IL 122327, ¶ 47.

¶ 27 Having reached this conclusion, we need not address the defendant's alternative arguments that his sentence violates the Illinois proportionate penalties clause or that the circuit court failed to properly admonish him pursuant to *Shellstrom*, 216 Ill. 2d 45, before recharacterizing his petition.

¶ 28 For these reasons, we reverse the dismissal of the defendant's postconviction petition and remand the case to the circuit court for resentencing consistent with this decision.

¶ 29 Reversed and remanded.