2021 IL App (1st) 191611-U

SECOND DIVISION
June 8, 2021

No. 1-19-1611

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | Appeal from the |
| Respondent-Appellee, | ) | Circuit Court of |
| | ) | Cook County. |
| v. | ) | |
| | ) | No. 80 C 6056 (01) |
| JOSE ESTRADA, | ) | |
| | ) | Honorable |
| Petitioner-Appellant. | ) | Alfredo Maldonado, |
| | ) | Judge Presiding. |
| | ) | |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court.
Justices Pucinski and Cobbs concur in the judgment.

**O R D E R**

¶ 1    *Held*: The circuit court erred in denying the petitioner leave to file his successive postconviction petition where the petitioner established both cause and prejudice with respect to his claim that his 80-year *de facto* life sentence, imposed for a crime he committed when he was 17 years old, was unconstitutional as applied to him both under the federal and state constitutions (U.S. Const., amend. VIII; Ill. Const. 1970, art. I, § 11).

¶ 2    The petitioner, Jose Estrada, appeals from the circuit court's denial of his *pro se* petition

for leave to file a successive postconviction petition pursuant to the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2018)). On appeal, the petitioner contends that he sufficiently established cause and prejudice so as to be granted leave to file his successive postconviction petition, alleging that, as applied to him, his 80-year *de facto* life sentence, imposed for an offense that he committed when he was a juvenile, violated both the eighth amendment (U.S. Const., amend VIII) and the Illinois proportionate penalties clause (Ill. Const. 1970, art. I, § 11). For the following reasons, we reverse the judgment of the circuit court, vacate the petitioner's sentence and remand for a new sentencing hearing.

¶ 3                                    I. BACKGROUND

¶ 4     The 40-year-old record before us contains the following relevant facts and procedural history. In 1980, the 17-years-old petitioner was charged with numerous counts of first-degree murder, attempted first degree murder, armed violence, and aggravated battery for his involvement in the September 1, shooting of three victims, Edgardo Pagan, Rafael Barrezueto, and Jose Melendez, which resulted in the death of Pagan and Barrezueto.

¶ 5     Briefly stated, the evidence at the petitioner's jury trial established that on the date in question, at about 1 a.m., the petitioner and his codefendant, Francisco Lopez, approached the three victims who were sitting in front of 1450 North Leavitt Street in Chicago, and shot at them. The victims, who were all teenagers and members of the "pee wee" Latin Kings were heard shouting gang slogans before the petitioner and codefendant Lopez fired at them. Lopez chased Barrezuelo and Melendez up the stairs into the building, still shooting, while the petitioner stood over Pagan, who had fallen to the ground, repeatedly firing at him. Pagan and Barrezuelo died as a result of the attack, while Melendez survived with a bullet wound to his right arm. The petitioner was apprehended the following day and identified from a police lineup by two witnesses. While

in custody, the petitioner signed a confession, which was introduced into evidence, stating that he recruited Lopez to attack the three victims in retaliation for a previous gang-related attack on him orchestrated by Pagan. In his confession, the petitioner also stated that he had been drinking prior to the attack.

¶ 6    The jury found the petitioner guilty of the murders of Pagan and Barrezuelo and the attempted murder of Melendez.

¶ 7    The trial court proceeded with sentencing on November 30, 1981. At the outset, defense counsel sought a continuance to have a transcript prepared, but the trial court denied this request. No witness testimony was heard at the hearing. Instead, in aggravation, the State argued that the premediated nature of the offense and the petitioner's act of repeatedly shooting one of the victims as he lay on the ground necessitated the imposition of a mandatory natural life sentence. The State further argued that the court should impose a mandatory natural life sentence because this was a double homicide, even though the petitioner was only 17 years old at the time of the shooting. See Ill. Rev Stat. 1981, ch. 38 § 1005-8-1(a)(1)(c). The State also pointed out that the petitioner's record included a juvenile conviction for unlawful use of a weapon (UUW) and "several station adjustments."

¶ 8    In mitigation, defense counsel sought the imposition of the minimum 20-year sentence for first degree murder. Counsel pointed out the petitioner's youth, the fact that the petitioner's father died when the petitioner was about ten years old and that he was then raised by a single parent as one of ten other children. Counsel further asserted that accountability was an inadequate basis for the application of the mandatory natural life statute for multiple homicides (Ill. Rev Stat. 1981, ch. 38 § 1005-8-1(a)(1)(c)) and noted that the petitioner was only the triggerman for one of three

shootings.

¶ 9   After the petitioner declined to speak in allocution, the trial court sentenced him to concurrent terms of 80 years' imprisonment on each murder count and 10 years' imprisonment on the attempted murder conviction.   In doing so, the court merely stated that "the facts and circumstances" of this case, namely the double homicide, were such that they warranted the imposition of an "extended sentence," but not a natural life sentence.

¶ 10   The petitioner appealed his conviction and sentence arguing that: (1) the court erred in permitting the jury to deliberate with 14, instead of 12 jurors; (2) he was not proven guilty beyond a reasonable doubt of the attempted murder of Melendez; and (3) the trial court abused its discretion in sentencing him to an extended term.   On September 5, 1984, this court affirmed the petitioner's conviction and sentence.   See *People v. Estrada*, No. 1-81-3174 (1984) (unpublished order under Illinois Supreme Court Rule 23).   With respect to the petitioner's sentencing claim, we found that while the trial judge had not explained his rationale for imposing the extended term sentence on the record, it could be implied from the judge's comments that the sentence was premised upon the "cold-blooded" and thus "brutal and heinous nature" of the offense.

¶ 11    In 1999, the petitioner filed a postconviction petition alleging, *inter alia*, that his concurrent 80-year and 10-year sentences violated due process. The petitioner specifically invoked the Illinois proportionate penalties clause (Ill. Const. 1970, art. I, § 11) and argued that the trial court had failed to consider his rehabilitative potential, including his youth and history of addiction.   In support, the petitioner attached his own affidavit and a letter from his sister, Noemi Estrada.

¶ 12   In his affidavit, the petitioner attested that as a preteenager he regularly drank, took "PCP and acid" and "blacked out," which required his enrollment in special education classes and

resulted in poor grades in both grammar and high school. In her letter, Noemi described the petitioner's violent and abuse-filled childhood. She stated that their father was a violent alcoholic, who forced the petitioner to drink alcohol as a child, and physically abused the entire family. Among other things, Noemi recalled their father engaging in Russian roulette, holding a partly loaded revolver to their mother's head. Noemi also described an incident where their father held a gun near the petitioner's head and fired it, nearly striking both the petitioner and their mother. She also remembered that on one occasion their father awoke the then 8-year-old petitioner at 3 a.m. and forced him to drink hard alcohol, facilitating the petitioner's early alcoholism.

¶ 13 On July 12, 1999, the circuit court dismissed the petitioner's postconviction petition, finding it to be frivolous and patently without merit. The petitioner's subsequent appeal was dismissed for want of prosecution.

¶ 14 On April 13, 2001, the petitioner filed his first successive postconviction petition alleging that he was denied due process during his sentencing hearing because the court did not submit the issue of the extended term sentence to the jury to be proven beyond a reasonable doubt in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). On June 27, 2001, the circuit court summarily dismissed the petition, finding it to be frivolous and patently without merit. The petitioner voluntarily dismissed his subsequent appeal on August 29, 2002.

¶ 15 On January 31, 2018, the petitioner filed the instant petition for leave to file his second successive postconviction petition, alleging that his 80-year *de facto* life sentence imposed for a crime he committed as a juvenile was unconstitutional as applied to him both under the federal and state constitutions (U.S. Const., amend. VIII; Ill. Const. 1970, art. I, § 11). The petitioner therefore sought a new sentencing hearing pursuant to section 5-4.5-105 of the Unified Code of

Corrections (730 ILCS 5/5-4.5-105 (West 2018)).

¶ 16    The petitioner further asserted that he established the requisite cause for his failing to make this claim earlier because that claim was governed by *People v. Reyes*, 2016 IL 119271, and *People v.Buffer*, 2017 IL App 1st 142931, *aff'd on other grounds*, *People v. Buffer*, 2019 IL 122327, which were decided years after his trial and his first round of postconviction review.   The petitioner further asserted that he established prejudice because he was only 17 years old at the time of the offense, but the trial court considered neither his age nor his rehabilitative potential in imposing the 80-year *de facto* life sentence.   In support, the petitioner attached numerous exhibits that he asserted showed his rehabilitative potential, including, *inter alia*, letters of recommendation from prison officials detailing his success at various jobs during his incarceration, educational records documenting his efforts at obtaining a GED, records of his participation in Alcoholics Anonymous, and his contributions to "Jaycee programs" in prison.

¶ 17    On March 23, 2018, the circuit court denied the petitioner's request for leave to file his successive postconviction petition.   The court found that because the lengthy sentence was discretionary, and not mandatory, the petitioner did not necessarily benefit from recent Illinois developments in juvenile sentencing, which originated with the United States Supreme Court decision in *Miller v. Alabama*, 567 U.S. 460 (2012).   The court further held that because the petitioner was eligible for day-for-day good time sentencing credit, the nominal 80-year sentence was not "unsurvivable" and therefore not a *de facto* life sentence.

¶ 18    The petitioner filed a motion to reconsider, arguing that under this appellate court's decision in *People v. Buffer*, 2017 IL App (1st) 142931, a lengthy term-of-years sentence was to be treated as tantamount to natural life, regardless of whether it was mandatory or discretionary. The petitioner further asserted that sentencing credit should not be used in determining the length

of what constitutes a *de facto* life sentence. In a subsequent supplement to his motion, the petitioner further pointed out that he suffered from chronic medical conditions, including the removal of a gall bladder, which had the potential to lower his life expectancy.

¶ 19    On June 14, 2019, the circuit court denied the petitioner's motion to reconsider. In its written order, the court first noted that our supreme court's intervening decision in *People v. Buffer*, 2019 IL 122327 found that a sentence of more than 40 years imprisonment imposed on a juvenile defendant without a finding of incorrigibility is an unconstitutional *de facto* life sentence. The circuit court nonetheless found that because the petitioner was eligible for day-for-day good time credit, the 80-year term imposed should be viewed as a 40-year, rather than an 80-year term. Accordingly, the court found that even under our supreme court's decision in *Buffer*, the petitioner had not been condemned to a *de facto* natural life sentence. The petitioner now appeals.

¶ 20                                     III. ANALYSIS

¶ 21    On appeal, the petitioner contends that the circuit court erred in denying him leave to file his successive postconviction petition because he sufficiently established cause and prejudice as to his claim that his 80-year *de facto* life sentence, imposed for an offense that he committed when he was a juvenile, violated both the eighth amendment (U.S. Const., amend VIII) and the Illinois proportionate penalties clause (Ill. Const. 1970, art. I, § 11). For the following reasons, we agree.

¶ 22    We begin by noting that the Post-conviction Hearing Act (725 ILCS 5/122-1 et seq. West 2018)) provides a statutory remedy to criminal defendants who claim that substantial violations of their constitutional rights occurred either at trial or at sentencing. *People v. Edwards*, 2012 IL 111711, ¶ 21. The Act is not a substitute for an appeal, but rather, is a collateral attack on a final judgment. *Edwards*, 2012 IL 111711, ¶ 21. Accordingly, issues not presented in an original or amended petition will be deemed waived, and issues that have previously been raised and

addressed on appeal will be barred pursuant to the doctrine of *res judicata*. See *Edwards*, 2012 IL 111711, ¶ 21; see also *People v. Sanders*, 2016 IL 118123, ¶ 24 (citing 725 ILCS 5/122-3 (West 2014)).

¶ 23    Our supreme court has repeatedly held that the Act contemplates the filing of only one petition without leave of court. See *People v. Lusby*, 2020 IL 124046, ¶ 27; see also 725 ILCS 5/122-1(f) (West 2018). To obtain leave of court, the petitioner must demonstrate cause for his failure to raise the claim in the initial petition and prejudice from that failure. *Id.* To show cause the petitioner must identify an objective factor that impeded his ability to raise a specific claim during his initial post-conviction proceedings. *Id.*; see also *People v. Pitsonbarger*, 205 Ill. 2d 444, 462 (2002). To show prejudice the petitioner must demonstrate that the claim not raised during his initial postconviction proceedings so infected the resulting conviction or sentence that it violated due process. *Id.* It is the petitioner's burden to establish a *prima facie* showing of cause and prejudice before any further proceedings on his claims can occur. *People v. Bailey*, 2017 IL 121450, ¶ 24; *People v. Smith*, 2014 IL 115946, ¶ 30. A motion for leave of court to file a successive postconviction petition will be denied where the petitioner's claims fail as a matter of law. *Id.*; see also *Smith*, 2014 IL 115946, ¶ 35. Our review of the trial court's denial of a motion for leave to file a successive postconviction petition is *de novo*. See *Bailey*, 2017 IL 121450, ¶ 13.

¶ 24    Because the petitioner's constitutional claims are rooted in the legal developments governing the sentencing of juveniles that have evolved in the four decades since his 1981 sentencing hearing, we first briefly summarize those developments.

¶ 25    Beginning in 2012, in the seminal case of *Miller*, the United States Supreme Court first held that a sentence of mandatory life without parole for juveniles "violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.' " *Miller*, 567 U.S. at 465. The

rationale was that minors are constitutionally different from adults for purposes of sentencing, as they are less mature and responsible, more impulsive, and more vulnerable to peer pressure than adults. *Id.* at 471-74. *Miller* did not preclude life sentences for juveniles in all circumstances but rather required only that the trial court first consider the special characteristics of young offenders, such as immaturity, impetuosity, and the failure to appreciate risks and consequences, before imposing such a sentence on them. In other words, the Court's holding required that life-without-parole sentences be based on judicial discretion rather than statutory mandates. See Id. at 470.

¶ 26    In 2014, the Illinois Supreme Court held that *Miller* applied retroactively to cases on collateral review. *People v. Davis*, 2014 IL 115595, ¶¶ 39, 42. Later, the United States Supreme Court also held that *Miller* should apply retroactively and that state courts must apply *Miller* in collateral proceedings. *Montgomery v. Louisiana*, 136 S. Ct. 718, 736 (2016). *Montgomery* held that while *Miller* did not prohibit all life sentences for juvenile, such sentences were reserved for "the rare juvenile offender whose crime reflects irreparable corruption." (Internal quotation marks omitted.) *Id.* at 208. *Montgomery* explained that *Miller* "recognized that a [trial court] might encounter the rare juvenile offender who exhibits such irretrievable depravity that rehabilitation is impossible and life without parole is justified. But in light of 'children's diminished culpability and heightened capacity for change,' *Miller* made clear that 'appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon.' " *Id.* (quoting *Miller*, 567 U.S. at 479).

¶ 27    Relying on these principles, the Illinois Supreme Court has since extended *Miller* to apply to juvenile offenders who were sentenced to life imprisonment, whether natural or *de facto* (*Reyes*, 2016 IL119271, ¶¶ 9-10), or mandatory or discretionary, and the trial court failed to consider their youth and attendant characteristics when imposing the sentence (*People v. Holman*, 2017 IL

120655, ¶ 40). In addition, while the petitioner's request for leave to file his successive postconviction petition was pending before the circuit court, our supreme court has unequivocally held that a prison sentence of over 40 years imposed on a juvenile offender constitutes a *de facto* life sentence in violation of the eighth amendment. See *Buffer*, 2019 IL 122327, ¶ 41.

¶ 28    According to our supreme court's present interpretation of *Miller*, a sentencing court may impose a life sentence on a juvenile offender but only after it has considered the defendant's youth and its attendant characteristics and made a finding of "irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation." *Holman*, 2017 IL 120655, ¶ 46; see also *Buffer*, 2019 IL 122327, ¶ 24. In making this determination, our supreme court and our legislature have instructed the sentencing courts to consider the following non-exhaustive list of youthful characteristics: (1) the juvenile defendant's chronological age at the time of the offense and any evidence of his particular immaturity, impetuosity, and failure to appreciate risks and consequences; (2) the juvenile defendant's family and home environment; (3) the juvenile defendant's degree of participation in the homicide and any evidence of familial or peer pressures that may have affected him; (4) the juvenile defendant's incompetence, including his inability to deal with police officers or prosecutors and his incapacity to assist his own attorneys; and (5) the juvenile defendant's prospects for rehabilitation." *Holman*, 2017 IL 120655, ¶ 46; see also 730 ILCS 5/5-4.5-105(a) (West 2018). Therefore, if a trial court in Illinois wishes to impose a sentence of more than 40 years on a juvenile offender, it must first go through these factors and determine that the defendant is one of the rare juveniles "whose crime reflects irreparable corruption." (Internal quotation marks omitted.) *Montgomery*, 577 U.S. at 208; see *Buffer*, 2019 IL 122327, ¶ 24.

¶ 29    We are cognizant that in *Jones v. Mississippi*, 593 U.S. ___, 141 S. Ct. 1307 (2021), the United States Supreme Court recently reinterpreted *Miller* and *Montgomery* and held that the eighth amendment creates no federal requirement that a trial court find a juvenile offender permanently incorrigible before imposing a life sentence. Nonetheless, in so holding, the Supreme Court also noted that states are free to impose "additional sentencing limits in cases involving defendants under 18" or "require sentencers to make [specific] factual findings before sentencing an offender under 18 to life without parole." *Id.* at ___, 141 S. Ct. at 1323. In fact, the Court held that states are not limited in the procedures they choose to apply in determining when, as well as whether, a juvenile offender can ever be sentenced to life. *Id.* at ___, 141 S. Ct. at 1323. Accordingly, until our supreme court tells us otherwise, and in line with our legislative mandate, we shall follow the procedures that have stemmed from our supreme court's interpretations of *Miller* prior to the issuance of *Jones*.  "In line with that precedent, we continue to require sentencing courts to consider a juvenile offender's youth and its attendant characteristics and make a finding of permanent incorrigibility prior to imposing a life sentence."  See *People v. Ruiz*, 2021 IL App (1st) 182041, ¶ 62.

¶ 30    With these principles in mind, we turn to the merits of this appeal.

¶ 31    On appeal, the petitioner first contends, and the State rightly concedes, that he has sufficiently established cause for his failure to raise his *Miller*-based eighth amendment and proportionate penalties sentencing challenge in his earlier petitions. This court has previously held that a postconviction petitioner establishes cause for filing a postconviction petition relying on *Miller* and its progeny, where those cases had not been decided at the time the petitioner filed an earlier postconviction petition. *People v. Rivera*, 2020 IL App (1st) 171430, ¶ 20 (citing cases); see also *Davis*, 2014 IL 115595, ¶ 42.

¶ 32    In this case, the petitioner filed his first postconviction petition in 1999, and his successive postconviction petition in 2001, decades before *Miller* was decided and before the Illinois Supreme Court first held that *Miller* applied retroactively to cases on collateral review. See *Davis*, 2014 IL 115595, ¶ 39. Moreover, as already articulated above, since 1981 when the petitioner's sentence was imposed, there has been much development in this area of law in Illinois. Specifically, it was not until after the petitioner's request for leave to file the instant successive petition was denied that our supreme court decided *Buffer* and held that a sentence of more than 40 years constitutes *de facto* life for juvenile offenders. See *Buffer*, 2019 IL 122327, ¶ 27. Thus, consistent with the above precedent, we find that the petitioner has established cause for failing to raise his federal and state constitutional claims earlier. See *Rivera*, 2020 IL App (1st) 171430, ¶ 20; see also *People v. Minniefield,* 2020 IL App (1st) 170541, ¶ 31; *People v. Carrasquillo*, 2020 IL App (1st) 180534, ¶ 108.

¶ 33    Turning to the prejudice prong, for the following reasons, and contrary to the State's position, we find that the petitioner has successfully established the requisite prejudice because at this stage of proceedings it cannot be said that his constitutional claim fails as a matter of law. See *Smith*, 2014 IL 115946, ¶ 35.

¶ 34    As already noted above, under our supreme court's holding in *Buffer*, without a finding of incorrigibility any sentence over 40 years imposed on a juvenile defendant constitutes an unconstitutional *de facto* life sentence. See *Buffer*, 2019 IL 122327, ¶ 27.

¶ 35    In the present case, the 17-year-old petitioner was sentenced to 80 years' imprisonment, a sentence well beyond the 40 years permitted under *Buffer*. Moreover, the record of the petitioner's 1981 sentencing hearing reveals that while the trial court may have been aware of the petitioner's age, it was neither fully apprised of, nor meaningfully considered any mitigating factors, let alone

the petitioner's youth, circumstances and upbringing (including his father's repeated abuse). See *People v. Harvey*, 2019 IL App (1st) 153581, ¶ 13 ("the court's mere awareness of a defendants' age and consideration of a [presentence investigation report] PSI does not provide evidence that the circuit court specifically considered defendant's youth and attendant characteristics."). Nor did the court in any way indicate that the petitioner was incorrigible, and beyond rehabilitation, so as to have justified the imposition of the 80-year *de facto* life sentence. In fact, when asked by the State to impose a natural life sentence the trial judge refused, and instead opted for a lengthy 80-year extended term. Under this record, and following *Buffer*, we must conclude that the petitioner's constitutional *Miller*-based claims by means fail as a matter of law.

¶ 36     The State nonetheless asserts that because he was entitled to day-for-day good-time credit served, the petitioner was not sentenced to *de facto* life so as to have triggered the requirements of *Miller*. Citing to the Illinois Department of Corrections' website, the State notes that the petitioner's "projected parole date is July 11, 2028," under which he will have served no more than 40 years' imprisonment, a sentence that is not *de facto* life under *Buffer*. Accordingly, the State argues that the petitioner's claims fail as a matter of law and that he cannot establish the requisite prejudice. We disagree.

¶ 37     Contrary to the State's position, our appellate court has repeatedly held that the availability of statutory good-time sentencing credit "is irrelevant to the determination of whether a [juvenile] defendant has been sentenced to a *de facto* life sentence," *i.e.*, a sentence greater than 40 years' imprisonment. See *Ruiz*, 2021 IL App (1st) 182041, ¶ 70; *People v. Thornton*, 2020 IL App (1st) 170677, ¶ 20; *People v. Peacock*, 2019 IL App (1st) 170308, ¶ 19, *appeal filed*, No. 125340 (Ill. Oct. 4, 2019); *People v. Figueroa*, 2020 IL App (1st) 172390, ¶ 35; *People v. Daniel*, 2020 IL App

(1st) 172267, ¶¶ 23-26; *People v. Quezada*, 2020 IL App (1st) 170532, ¶ 13; *People v. DiCorpo*, 2020 IL App (1st) 172082, ¶ 53.

¶ 38    We first addressed this issue in *Peacock*, in the context of an 80-year sentence imposed on a juvenile offender for murder. *Peacock*, 2019 IL App (1st) 170308, ¶¶ 1-3. In that case, just as here, in light of the holding in *Buffer*, the State argued that because the defendant could be released in 40 years or less with good time served, his sentence was not *de facto* life and the court was not required to find the defendant permanently incorrigible before imposing the 80-year term. *Id.* ¶ 15. We rejected the State's argument, holding that the defendant's sentence was indeed *de facto* life. *Id.* ¶ 17. As we aptly explained:

> "Defendant was not sentenced to 40 years' imprisonment but was instead sentenced to 80 years' imprisonment with the mere possibility of release after 40 years. Moreover, to serve a sentence of 40 years, he must receive every single day of good conduct credit for which he could be eligible. Defendant's receipt of day-for-day credit is not guaranteed. [Citations.] The IDOC 'has the right to revoke good-conduct credits for disciplinary infractions, [and] an inmate's right to receive the credits is contingent upon his good behavior while in prison.' [Citations.] The IDOC 'ultimately has discretion as to whether defendant will be awarded any credit,' and the trial court has no control over the manner in which a defendant's good conduct credit is earned or lost. [Citation.] Accordingly, we conclude that defendant's 80-year sentence, for which he may receive day-for-day credit, constitutes a *de fcto* life sentence." *Id.* ¶ 19.

¶ 39    Subsequently in *Thornton*, we revisited the issue in the context of a juvenile defendant's postconviction challenge to his 70-year murder sentence. *Thornton*, 2020 IL App (1st) 170677, ¶¶ 20-22. Here again, the State argued that because of good-time credit, the defendant was likely

to serve only 35 years and therefore his sentence should be treated as a 35-year term rather than an unconstitutional 70-year de facto life sentence. *Id.* ¶ 18. The State also explicitly urged this court to find that Peacock had been wrongly decided. *Id*. ¶ 21. Rejecting the State's argument, we reiterated that day-for-day credit is not guaranteed because it is IDOC rather than the trial court that has the ultimate discretion as to whether any such credit will be awarded. *Id.* ¶ 22. We therefore held that "the State's assurances [of good time credit] are not enough for us to consider the defendant's sentence as anything other than a 70-year term." *Id.*

¶ 40    Since *Thornton*, our appellate courts have repeatedly reaffirmed the holding in *Peacock*. See *Figueroa*, 2020 IL App (1st) 172390, ¶ 35 ("we adhere to *Peacock* and *Thornton*"); *Daniel*, 2020 IL App (1st) 172267, ¶¶ 23-26 (applying *Peacock* and *Thornton* to find that a 70-year sentence was *de facto* life, even though defendant was eligible for day-for-day good-conduct credit that could "reduce his time served to 35 years"); *Quezada*, 2020 IL App (1st) 170532, ¶¶ 13, 16 ("declin[ing] to depart from our holding in *Peacock*" and holding that a "judicially imposed sentence cannot exceed the bounds of *Buffer*, irrespective of the availability of sentencing credit"); *DiCorpo*, 2020 IL App (1st) 172082, ¶ 54 (listing all the decisions that have reaffirmed *Peacock*); *cf. People v. Gavin*, 2021 IL App (1st) 182085, ¶ 54 ("[w]e agree wholeheartedly with the reasoning in *Peacock* and do not depart from it here," but nonetheless distinguish the defendant's situation from the one found in *Peacock* because all the good time credit has already been served and the sentences have been discharged).

¶ 41    Most recently in *Ruiz*, we reaffirmed the rationale of these decisions and held that it is improper for a trial court to consider day-for-day credit in determining whether a defendant's term-of-year sentence that exceeds 40 years constitutes *de facto* life. In doing so, we explained that

15

day-for-day credit is a function of IDOC and not the judiciary. *Ruiz*, 2021 IL App (1st) 182041, ¶ 69. As we stated:

> " 'It is axiomatic that "the trial court does not control the manner in which good-conduct credit is earned and lost by a prisoner.' " *People v. Castano*, 392 Ill. App. 3d 956, 960 (2009); see also *Quezada*, 2020 IL App (1st) 170532, ¶ 16. The Unified Code of Corrections tasks the IDOC, not the trial court, with prescribing the rules and regulations for awarding and revoking sentencing credit. 730 ILCS 5/3-6-3 (West 2018). 'The Director of the [IDOC] has the "sole discretion" to determine whether an inmate receives sentencing credit and in what amount.' *Quezada*, 2020 IL App (1st) 170532, ¶ 16 (quoting *Lee v. Godinez*, 2014 IL App (3d) 130677, ¶ 9). Accordingly, were we to adopt the State's position, we would be leaving it up to IDOC to determine 'whether defendant serves an unconstitutional *de facto* life sentence.' *Id.* Instead, by holding that 'the judicially imposed sentence cannot exceed the bounds of *Buffer*, irrespective of the availability of sentencing credit,' we take the matter out of IDOC's hands and ensure that a juvenile offender 'does not serve a sentence that is incompatible with our supreme court's pronouncements in *Buffer*.' " *Id.* [1]

¶ 42    We reject the State's invitation to reconsider this entire line of precedent. Instead, consistent with the aforementioned decisions we find that the petitioner here was sentenced to an unconstitutional *de facto* life sentence.

---

[1]We note that this exact issue is currently before our supreme court in *People v. Dorsey*, 2017 IL App (1st) 151124-U, *appeal allowed*, No. 123010 (Ill. Mar. 25, 2020). In that case, prior to our supreme court's decision in *Buffer*, in an unpublished order, the appellate court held that good-time credit may be considered in calculating whether a sentence constitutes *de facto* life. Until our supreme court decides *Dorsey*, or rules otherwise, we continue to abide by the overwhelming precedent of our appellate courts.

¶ 43                              IV. CONCLUSION

¶ 44     Taking into account that the petitioner has been incarcerated since 1981, has already served 30 years of his sentence, and is projected to be paroled in less than seven years, instead of remanding for further proceedings under the Postconviction Hearing Act, for purposes of expedience and judicial economy, we find that the appropriate remedy is to vacate the petitioner's sentence and remand for a new sentencing hearing. See *Harvey*, 2019 IL App (1st) 153581, ¶ 14 (holding that the appropriate remedy for the circuit court's denial of a defendant's request for leave to file his postconviction petition, alleging that his concurrent 52-year and 30-year sentences were unconstitutional, was remand for a new sentencing hearing, in the interest of judicial economy). Moreover, we instruct that on remand, the petitioner shall be entitled to be sentenced under the scheme prescribed by section 5-4.5-105 of the Unified Code of Corrections (730 ILCS 5/5-4.5-105 (West 2018)). See *Buffer*, 2019 IL 122327, ¶ 47.

¶ 45     Based on the foregoing, we reverse the judgment of the circuit court, vacate the petitioner's sentence and remand for further proceedings consistent with this order.

¶ 46     Sentence vacated; reversed and remanded.