2022 IL App (1st) 172583-UB

No. 1-17-2583

Filed March 31, 2022

Fourth Division

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 96 CR 01838-02 |
| | ) | |
| ERIC ANDERSON, | ) | Honorable |
| | ) | Arthur F. Hill, Jr., |
| Defendant-Appellant. | ) | Judge, Presiding |

JUSTICE MARTIN delivered the judgment of the court.
Presiding Justice Delort and Justice Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Defendant's 60-year sentence for double murder committed as a juvenile is not a *de facto* life sentence since defendant is eligible for release on parole with day-for-day good conduct credit upon serving 30 years in prison. Defendant's 60-year sentence is neither cruel, degrading, nor so disproportionate to the offense as to shock the moral sense of the community.

¶ 2    Eric Anderson was originally sentenced to natural life for two first degree murder convictions committed as a juvenile. He was later resentenced to 60 years' imprisonment. This matter is before us pursuant to a supervisory order of the Illinois Supreme Court following our

initial order, filed May 29, 2020. In that order, this court vacated Anderson's sentence, and remanded this case for a new sentencing hearing.[1] We found that Anderson's 60-year prison term constituted a *de facto* life sentence pursuant to *People v. Buffer*, 2019 IL 122327, and the record failed to show that the circuit court specifically considered his youth and its attendant characteristics or rehabilitative potential as required to impose a discretionary *de facto* life sentence in accord with *Miller v. Alabama*, 567 U.S. 460 (2012). *People v. Anderson*, 2020 IL App (1st) 172583-U, ¶¶ 25, 27. Both parties filed petitions for rehearing, which were denied. The State filed a petition for leave to appeal in the Illinois Supreme Court. On November 24, 2021, the supreme court denied the petition for leave to appeal but issued a supervisory order directing this court to vacate our initial judgment and "consider the effect of [the Illinois Supreme] Court's opinion in *People v. Dorsey*, 2021 IL 123010, on the issue of whether defendant's sentence constitutes a *de facto* life sentence, and determine if a different result is warranted." *People v. Anderson*, No. 126550 (Ill. Nov. 24, 2021) (supervisory order). We allowed the parties to submit supplemental briefs addressing *Dorsey*'s effect on Anderson's claims. Upon review of the record and consideration of *Dorsey*, we find a different result is indeed warranted and affirm the sentence imposed by the circuit court.

¶ 3                                          I. BACKGROUND

¶ 4          Eric Anderson, then age 15, shot and killed two 13-year-old girls, Helena Martin and Carrie Hovel, in December 1995. The girls were sitting in a parked minivan listening to music and talking with three other teenage friends. The van belonged to a member of the Ridgeway Lords street gang. Anderson was a member of the rival Almighty Popes street gang and had been involved in

---

[1] Justice Shelvin Louise M. Hall originally sat on the panel of this appeal and delivered its disposition. Justice Hall has retired from the appellate court. Therefore, Justice LeRoy K. Martin, Jr. will serve in her stead and has read the briefs, record, and initial order.

prior altercations with the Ridgeway Lords. On December 14, the Almighty Popes had a meeting in which Anderson volunteered to "hit up the van" he knew to be associated with the Ridgeway Lords. That same day, Anderson and another Pope burglarized the home of a police officer and stole two handguns. Later, Anderson observed the van parked near Hale Park, which was on the Popes' "turf." Anderson, with two fellow Popes, approached the van. As the van pulled away, Anderson fired several shots with one of the stolen handguns. Martin and Hovel were both struck in the head and killed instantly. Following a jury trial in which he was convicted of both of their murders, Anderson was sentenced to a mandatory term of natural life imprisonment. This court affirmed his conviction and sentence. *People v. Anderson*, Nos. 1-98-2438 & 1-98-2390 cons. (1998) (unpublished order pursuant to Supreme Court Rule 23).

¶ 5       In 2012, the United States Supreme Court held that sentencing a juvenile to mandatory life without the possibility for parole violates the eighth amendment to the United States Constitution. *Miller*, 567 U.S. at 479. The following year, Anderson filed a petition for leave to file a successive postconviction petition in the circuit court, claiming that his mandatory natural life sentence violated the eighth amendment pursuant to *Miller*. The circuit court granted Anderson leave to file his successive petition and later vacated his sentence based on *Miller* and set the matter for a new sentencing hearing.

¶ 6       In that hearing, the State presented evidence about the murders and impact statements from family members of the victims.[2] In mitigation, Anderson presented several witnesses, including a psychologist who testified regarding cognitive and behavioral differences between juveniles and adults, and correctional officers who testified regarding Anderson's good conduct and maturity during his incarceration. Following the hearing, the circuit court stated that it had considered the

---

[2]The judge presiding over Anderson's 2017 resentencing hearing was not the same judge who presided over his trial and first sentenced him in 1998.

evidence presented and all statutory factors, including those applicable to youth and its attendant circumstances, and sentenced Anderson to a term of 60 years in the Illinois Department of Corrections (IDOC). Anderson appealed.

¶ 7                                   II. ANALYSIS

¶ 8        In *Miller*, the United States Supreme Court held that the eighth amendment prohibits mandatory life-without-parole for juvenile offenders. *Id*. The decision recognized that "children are constitutionally different from adults for purposes of sentencing." *Id*. at 471. Children have a "lack of maturity and an underdeveloped sense of responsibility," which leads to "recklessness, impulsivity, and heedless risk-taking." *Id*. Children are also more vulnerable to negative influences and outside pressures, have limited control over their own environment, and "lack the ability to extricate themselves from horrific, crime-producing settings." *Id*. The Court further reasoned that a child's character is not as well-formed as an adult's. *Id*. A child's traits are "less fixed," and their actions are "less likely to be evidence of irretrievable depravity." *Id*. *Miller* applies retroactively to cases on collateral review. *Montgomery v. Louisiana*, 577 U.S. 190 (2016); *People v. Davis*, 2014 IL 115595. Accordingly, the eighth amendment protections of *Miller* apply to Anderson, who was sentenced long before the *Miller* decision.

¶ 9        The Illinois Supreme Court extended *Miller*'s reasoning to provide relief for juveniles who received discretionary life sentences where the trial court failed to consider youth and its attendant characteristics (*People v. Holman*, 2017 IL 120655, ¶ 40) and to *de facto* life sentences—terms of years so long as to be the functional equivalent of life without the possibility of parole (*People v. Reyes*, 2016 IL 119271, ¶ 9). Later, our supreme court determined that "a prison sentence of 40 years or less imposed on a juvenile offender does not constitute a *de facto* life sentence in violation of the eighth amendment." *Buffer*, 2019 IL 122327, ¶ 41. Rather, such a sentence "provides some

meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation" in accord with *Miller*. [Internal quotation marks omitted.] *Id*.

¶ 10       Following *Buffer*, the appellate court found in several cases that the availability of day-for-day, good conduct credit was not relevant to the determination of whether a term-of-years sentence amounts to *de facto* life. See, *e.g.*, *People v. Peacock*, 2019 IL App (1st) 170308, ¶¶ 18-19, *overruled by Dorsey*, 2021 IL 123010. Applying that reasoning, a juvenile offender with a sentence of 40 or more years would be found to be serving a *de facto* life sentence even if eligible for day-for-day credit that could result in release prior to serving 40 years in prison. Such defendants would, therefore, be entitled to a new sentencing hearing unless the sentencing court considered factors of youth and its attendant characteristics, which Illinois courts have referred to as the *Miller* or *Holman* factors. See *Holman*, 2017 IL 120655, ¶ 46; see also 730 ILCS 5/5-4.5-105 (West 2016) (Illinois's statutory requirement for consideration of such factors). Anderson's nominal 60-year sentence was, of course, greater than the 40-year line drawn in *Buffer*. However, Anderson was eligible to receive day-for-day credit since his offense occurred before the enactment of the Truth-in-Sentencing Act, which disqualified persons convicted of first degree murder from day-for-day credit and required the nominal prison term to be served in full. See 730 ILCS 5/3-6-3(a)(2)(i) (West 1998); Pub. Act 90-535, § 40 (eff. June 19, 1998). With day-for-day credit, Anderson could be released on parole (mandatory supervised release) upon serving 30 years—ten years under *Buffer*'s 40-year ceiling.

¶ 11       Following our initial order in this case, our supreme court in *Dorsey* considered the effect of eligibility for day-for-day credit on the determination of whether a juvenile offender's sentence constitutes *de facto* life. The defendant in *Dorsey* was sentenced to an aggregate term of 76 years after being convicted of first degree murder and two attempted first degree murders he committed

at age 14. *Dorsey*, 2021 IL 123010, ¶¶ 4-5, 19. Like Anderson, he was eligible to receive day-for-day credit since Dorsey's crimes were committed in 1996, before truth-in-sentencing took effect. *Id*. ¶ 50. The court held that Dorsey's 76-year term was not a *de facto* life sentence—the functional equivalent of life without the possibility of parole—because, with day-for-day credit eligibility, the defendant had "an opportunity to demonstrate maturity and rehabilitation" upon serving 38 years, within the 40-year boundary established in *Buffer*. *Id*. The day-for-day credit scheme is "designed to encourage rehabilitation and enable an offender to be released after he serves half of the determinate sentence." *Id*. ¶ 52. The court remarked that day-for-day credit eligibility is "at least on par with discretionary parole for a life sentence," which complies with the eighth amendment. *Id*. ¶ 54. Thus, the court concluded that if a juvenile offender, with eligibility for good conduct credit, can be released from prison after serving 40 years or less, the sentence does not constitute a *de facto* life sentence. *Id*. ¶¶ 1, 65.

¶ 12    The *Dorsey* opinion squarely addresses the issue in this case. With day-for-day credit, Anderson could be released upon serving 30 years in prison—a shorter term than the sentence reviewed in *Dorsey*. Indeed, IDOC's website lists Anderson's projected parole date as February 2025. He will be 45 years old. See *People v. Johnson*, 2021 IL 125738, ¶ 54 (courts may take judicial notice of records displayed on the IDOC website). Pursuant to *Dorsey*, Anderson is, therefore, afforded a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. His 60-year term of imprisonment, with eligibility for day-for-day credit, is not a *de facto* life sentence.

¶ 13    As our initial order found that Anderson was entitled to relief on eighth amendment grounds, we left his alternative argument based on the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. 1, § 11) unaddressed. The proportionate penalties clause

provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." *Id*. "[T]he proportionate penalties clause's unique emphasis on rehabilitative potential provides 'a limitation on penalties beyond those afforded by the eighth amendment' to the United States Constitution." *People v. Ruddock*, 2022 IL App (1st) 173023, ¶ 68 (quoting *People v. Clemons*, 2012 IL 107821, ¶¶ 39-41). Thus, a proportionate penalties claim is not automatically defeated by the failure of a defendant's eighth amendment claim. *People v. Handy*, 2019 IL App (1st) 170213, ¶ 38. A sentence violates the proportionate penalties clause if "the punishment for the offense is cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community." *People v. Miller*, 202 Ill. 2d 328, 338 (2002).

¶ 14    Anderson was convicted of the murders of two 13-year-old girls. The trial evidence established that he volunteered to "hit up the van" of a rival street gang, burglarized a police officer's home to obtain a handgun for that purpose, and then indiscriminately fired at a van full of teenagers, killing two. This court has found that sentences comparable to Anderson's 60-year sentence, with day-for-day credit, are not disproportionate in cases where juveniles have committed similar offenses. See, *e.g.*, *Ruddock*, 2022 IL App (1st) 173023, ¶ 71 (55-year term for 16-year-old convicted of murder and attempted murder resulting from a shooting); see also *People v. Thornton*, 2022 IL App (1st) 170677-B, ¶ 35 (70-year sentence for cruel and heinous murder in which the 17-year-old defendant beat and drowned the victim). Likewise, we find that Anderson's sentence is neither cruel, degrading, nor so wholly disproportionate to the offense as to shock the moral sense of the community.

¶ 15    In his supplemental brief, Anderson argues that his sentence fails to fulfill the proportionate penalties clause's objective of restoring him to useful citizenship. He emphasizes evidence from

his resentencing hearing to assert that he has already demonstrated substantial rehabilitation and readiness for release. A warden testified that IDOC cannot provide him any further rehabilitation and is merely "warehousing" him at this point. While the proportionate penalties clause gives importance to rehabilitative potential, the Illinois Constitution does not require that rehabilitation must be given greater weight and consideration than the seriousness of the offense in determining a proper penalty. *People v. Taylor*, 102 Ill. 2d 201, 206 (1984). Anderson ultimately asserts that the sentencing court should have placed greater weight on the evidence of his rehabilitation. Such an argument simply asks this court to reweigh the evidence presented in the resentencing hearing and substitute our judgment for that of the sentencing court, which we will not do. *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ ¶ 19, 21.

¶ 16                                              III. CONCLUSION

¶ 17          Based on the foregoing, we affirm Anderson's sentence.

¶ 18          Affirmed.